NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0580-20
                        A-0581-20

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

JOELLE D. CARONNA,

     Defendant-Respondent.

_____

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

FREDDY COLLADO,

     Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **November 3, 2021** |
| **APPELLATE DIVISION** |

Argued October 14, 2021 – Decided November 3, 2021

Before Judges Fasciale, Sumners and Vernoia.

On appeal from interlocutory orders of the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 20-02-0221.

Nancy A. Hulett, Assistant Prosecutor, argued the cause for appellant State of New Jersey (Yolanda

Ciccone, Middlesex County Prosecutor, attorney; Nancy A. Hulett, of counsel and on the brief).

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for respondent Joelle D. Caronna (Joseph E. Krakora, Public Defender, attorney; Scott M. Welfel, of counsel and on the brief).

Joseph M. Mazraani argued the cause for respondent Freddy Collado (Mazraani & Liguouri, LLP, attorneys; Joseph M. Mazraani and Jeffrey S. Farmer, of counsel and on the brief).

Sarah D. Brigham, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Andrew J. Bruck, Acting Attorney General, attorney; Adam D. Klein, of counsel and on the brief).

Alexander Shalom, American Civil Liberties Union of New Jersey Foundation, argued the cause for amicus curiae (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom and Jeanne LoCicero, on the brief).

Barry H. Evenchick, Association of Criminal Defense Lawyers of New Jersey, argued the cause for amicus curiae (Pashman Stein Walder Hayden, attorneys; CJ Griffin, of counsel and on the brief).

The opinion of the court was delivered by

FASCIALE, P.J.A.D.

This appeal requires us to determine, as a matter of first impression, whether under our State Constitution the exclusionary rule applies to an unconstitutional and flagrant violation of a search warrant's knock-and-announce requirement. A detective requested and obtained a warrant that

2

required the police to knock and announce their presence before entering an apartment. The detective and two other officers arrived at the scene and saw defendant Freddy Collado outside approximately fifty yards from the apartment. As they detained him, Collado confirmed he did not "live around here," no one was in his house (which was in a different town), and that he did not have keys to the apartment. The three officers then went to the front door of defendant Joelle Caronna's apartment to execute the search warrant.

The police did not previously investigate the names of the lawful occupants of the apartment. But they had previously observed defendants utilize the apartment and knew Caronna's driver's license matched the apartment building address. Without any exigency or justification, and not knowing who was in the apartment, they did not knock on the front door and announce their presence. They simply opened the unlocked door and, in a normal tone, said, "Hello." Caronna, who was in an upstairs bedroom and naked from the waist down, responded by saying "Babe?" The police remained silent, climbed the stairs, entered her bedroom, and said, "How you doing, what's going on?"

A-0580-20

Then for the first time, they announced they were police and were there to search the apartment.[1] The parties agree that the police acted unconstitutionally by inexplicably ignoring the warrant's mandate to knock and announce. They disagree on the remedy.

The motion judge concluded that the exclusionary rule applied to the violation and suppressed drugs seized during the search. Pertinent to our adjudication of the issue presented, Article I, Paragraph 7 of the New Jersey Constitution generally provides greater protection against unreasonable searches and seizures than the Fourth Amendment of the United States Constitution. That is undisputed. The primary legal question is whether New Jersey's increased state constitutional safeguards support suppression of the drugs.

---

[1] A grand jury indicted Caronna and Collado (collectively defendants), who police believed were boyfriend and girlfriend, and charged them with second-degree conspiracy to commit the crimes of possession of a controlled dangerous substance (CDS) with intent to distribute (N.J.S.A. 2C:35-5) and financial facilitation of criminal activity (N.J.S.A. 2C:21-25), N.J.S.A. 2C:5-2; first-degree maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4; first-degree possession with intent to distribute more than five ounces of cocaine, N.J.S.A. 2C:35-5(b)(1); third-degree possession with intent to distribute heroin and/or fentanyl in a quantity less than one-half ounce, N.J.S.A. 2C:35-5(b)(3); third-degree possession with intent to distribute marijuana in a quantity greater than one ounce but less than five pounds, N.J.S.A. 2C:35-5(b)(11); and third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(a).

4                                                                A-0580-20

The State—joined by the Attorney General (AG) as amicus—argues against application of the exclusionary rule. Instead of focusing on Article I, Paragraph 7, they primarily rely on the Fourth Amendment as interpreted in Hudson v. Michigan, 547 U.S. 586, 591-94 (2006), which held, in a sharply divided decision, that the exclusionary rule is not a necessary remedy for knock-and-announce violations. Even though the officers here unjustifiably ignored the knock-and-announce requirement, the State and AG contend that causation was too attenuated to justify exclusion, and they argue deterrence from this type of police misconduct is achievable by means other than suppression. They say deterrence is generally achieved by police wearing body cameras; by victims of these constitutional violations filing civil lawsuits against the police seeking compensatory and punitive damages under 42 U.S.C. § 1983; and by victims of the unconstitutional behavior filing civilian complaints before Internal Affairs (IA) seeking disciplinary action against law enforcement officers.[2]

Defendants—joined by amici Association of Criminal Defense Lawyers of New Jersey (ACDL-NJ) and the American Civil Liberties Union of New Jersey Foundation (ACLU)—disagree. They implore us to apply the

---

[2] At oral argument before us, the State was unable to confirm whether the officers here were disciplined.

heightened protections available under Article I, Paragraph 7, not the minimum guarantees afforded by the Fourth Amendment. They emphasize that Article I, Paragraph 7 provides greater protection against unreasonable searches and seizures than the Fourth Amendment, as interpreted in Hudson, and that the heightened state constitutional guarantees apply to police who unjustifiably violate a knock-and-announce warrant requirement. Defendants reiterate that Hudson interpreted the Fourth Amendment, not Article I, Paragraph 7. They argue that only the exclusionary rule effectively deters police from these violations, rather than wearing body cameras or the possibility of facing a civil lawsuit or disciplinary charge. Although their body cameras were on[3] and these other remedies existed, the officers still entered the apartment without knocking or announcing their presence. In other words, body cameras, potential Section 1983 actions, or possible disciplinary actions did not effectively deter the flagrant violation that occurred here.

We hold that the exclusionary rule applies where police violate Article I, Paragraph 7 by unreasonably and unjustifiably ignoring a search warrant requirement that they knock and announce their presence before entering a dwelling. We also conclude that no exception to the exclusionary rule applies

---

[3] At least two of the three officers who entered the apartment utilized body cameras.

here, especially because of the flagrant violation. New Jersey's Constitution "provides greater protection against unreasonable searches and seizures than the Fourth Amendment." State v. Carter, 247 N.J. 488, 504 (2021). Compliance with a knock-and-announce warrant requirement is a critical predicate for a reasonable search under our State Constitution. It is simply objectively unreasonable—without justification[4]—for police to ignore a knock-and-announce requirement contained in a warrant that they requested and obtained. Ignoring the requirement contravenes the search and seizure rights of New Jersey residents. Our holding comports with New Jersey's Article I, Paragraph 7 law; effectively deters police from flagrantly violating knock-and-

---

[4] Of course, we recognize that under certain circumstances, the requirement to knock and announce is not absolute. Our holding does not change that. In general, reasons to ignore the requirement are (i) exigent circumstances; or (ii) officers have demonstrated a reasonable, particularized suspicion that a no-knock entry is required to (a) prevent destruction of evidence, (b) to protect the officer's safety, or (c) to effectuate an arrest or seizure of evidence. See State v. Robinson, 200 N.J. 1, 14 (2009). And the requirement to knock-and-announce does not apply if—unlike here—police execute a warrant for the search of an unoccupied residence. See State v. Bilancio, 318 N.J. Super. 408, 410 (App. Div. 1999).

But this case is not about whether the police justifiably ignored the knock-and-announce requirement. And it is certainly not about whether the police knocked and announced and then failed to sufficiently wait before entering. The motion judge's finding that there existed no justification or exigencies to authorize entering without knocking and announcing is supported by substantial credible evidence in the record, and the parties acknowledge as much. The State does not challenge that part of the motion judge's analysis and findings.

announce search warrant requirements; safeguards against unconstitutional, unreasonable, and illegal searches and seizures under New Jersey law; and, importantly, upholds the rule of law and integrity of our administration of justice.

In these back-to-back appeals, which we have consolidated for this opinion, we therefore affirm the interlocutory order entered by the motion judge suppressing the drugs.

I.

We understand that under the Fourth Amendment, our holding would be different. We certainly do not question the United States Supreme Court's interpretation of the Fourth Amendment. That Court is the final arbiter of the Federal Constitution. See Comm. to Recall Robert Menendez From the Off. of U.S. Senator v. Wells, 204 N.J. 79, 131 (2010). But it does not necessarily follow that applying the heightened liberty safeguards of Article I, Paragraph 7 requires the same result.

A.

Hudson does not comport with our State Constitution. In Hudson, police executed a search warrant of the defendant's home for narcotics and weapons. 547 U.S. at 588. Upon arrival at the defendant's home, the police—unlike here—announced their presence, but waited only "three to five seconds,"

before entering the home through the unlocked front door.[5]  Ibid.  The defendant moved to suppress the evidence found in the search on the ground that the police violated the Fourth Amendment and Michigan's knock-and-announce statute by failing to properly knock and announce before entering his home.[6]  Ibid.

---

[5]  We reiterate, this case is not about whether the police reasonably waited after knocking and announcing their presence before entering the apartment. Here, unlike in Hudson, they did not knock and announce.

[6]  Although referred to as the "knock-and-announce" statute, the Michigan law only requires police to announce their authority and purpose when executing a warrant (which they did in Hudson, unlike here):

> The officer to whom a warrant is directed, or any person assisting him, may break any outer or inner door or window of a house or building, or anything therein, in order to execute the warrant, if, after notice of his authority and purpose, he is refused admittance, or when necessary to liberate himself or any person assisting him in execution of the warrant.
>
> [40 Mich. Comp. Laws § 780.656 (2021).  See e.g., People v. Harvey, 195 N.W.2d 773, 775 (Mich. Ct. App. 1972) (concluding the officer complied with the knock-and-announce statute when the officer "knocked on the door leading to the living quarters, loudly announced the presence of a law enforcement agency with a search warrant, announced the purpose, a raid, waited long enough for the inhabitants to reach the door from the room farthest away, and then began to kick in the door").]

A-0580-20

The Michigan trial court granted the motion to suppress.[7]  Ibid.  The Michigan Court of Appeals reversed on an interlocutory review, based on recent Michigan Supreme Court cases holding that suppression was not the appropriate remedy when officers made entry without a proper "knock and announce."  Id. at 588-89. The Michigan Supreme Court denied leave to appeal, and after the defendant's conviction,[8] the defendant appealed to the United States Supreme Court.  Id. at 589.

Writing for the majority, in a five-to-four decision, Justice Antonin Scalia held that the exclusionary rule did not apply to a knock-and-announce violation because causation was too attenuated to justify exclusion, and because the deterrence benefits did not outweigh the substantial social costs given that there were other ways to deter such violations.  Id. at 594-99. Justice Scalia reasoned that a victim of an unlawful police action may sue for

---

[7] The prosecution in Hudson conceded that the officers violated the statute. 547 U.S. at 590.  In Michigan's merits brief to the United States Supreme Court, it argued that the suppression hearing was held on the defendant's contention that "the officers executing the warrant had failed to wait a reasonable period after announcing their presence and purpose."  Brief for Respondent, Hudson v. Michigan, 547 U.S. 586 (2006) (No. 04-1360), 2005 U.S. S. Ct. Briefs LEXIS 667, at *8.

[8]  The defendant renewed his Fourth Amendment argument on appeal from his conviction.  Id. at 589.  The Michigan Court of Appeals affirmed the conviction for the same reasons as its decision in the interlocutory review, and the Michigan Supreme Court again declined review.  Ibid.

A-0580-20

damages based on 42 U.S.C. § 1983. Id. at 597-99. According to Justice Scalia, there was "increasing evidence that police forces across the United States take the constitutional rights of citizens seriously." Id. at 599. To further justify the inapplicability of the exclusionary rule, Justice Scalia found there was an "increasing professionalism of police forces, including a new emphasis on internal police discipline" since that Court decided Mapp.[9] Id. at 598. Hence, he was satisfied police would adhere to the knock-and-announce requirement to avoid becoming a defendant in a Section 1983 action, or the subject of internal discipline. Id. at 597-99. In the majority's view, effective deterrence of violations of knock-and-announce search warrant requirements can be achieved without suppressing evidence.

The majority did not fully embrace Justice Scalia's views, as Justice Anthony Kennedy concurred. In State v. Rodriguez, we explained that "to fully understand the extent or future application of the [Hudson] holding, consideration must also be given to Justice Kennedy's concurring opinion." 399 N.J. Super. 192, 203 (App. Div. 2008); see id. at 205 (evidencing our strong disinclination to follow Hudson because "Justice [Stephen] Breyer's dissenting opinion appear[ed] far more in tune with the manner in which our

---

[9] Mapp v. Ohio, 367 U.S. 643 (1961).

courts have interpreted and applied the similar provisions of [our] [S]tate [C]onstitution"). Justice Kennedy emphasized in his concurrence that a breach of a warrant's knock-and-announce requirement "is a serious matter," and "[s]ecurity must not be subject to erosion by indifference or contempt." Hudson, 547 U.S. at 603 (Kennedy, J., concurring).

Four members of the United States Supreme Court rejected the majority's conclusion that Section 1983 cases would deter knock-and-announce violations. Hudson, 547 U.S. at 609-11 (Breyer, J., dissenting). The dissenters concluded that the majority decision "weakens, perhaps destroys, much of the practical value of the Constitution's knock-and-announce protection." Id. at 605. They asserted that the majority's holding was based solely on "an unvarnished judicial instinct." Id. at 629. On this point, and highlighting the majority's acknowledgment that Section 1983 actions would involve limitations on the amount of likely compensable damages, the dissenters explained:

> To argue [as the majority acknowledged] that there may be few civil suits because violations may produce nothing "more than nominal injury" is to confirm, not to deny, the inability of civil suits to deter violations. And to argue without evidence (and despite myriad reported cases of violations, no reported case of civil damages, and Michigan's concession of their nonexistence) that civil suits may provide deterrence because claims may "have been settled" is, perhaps, to search in desperation for an argument. Rather, the

A-0580-20

majority, as it candidly admits, has simply "assumed" that, "[a]s far as [it] know[s], civil liability is an effective deterrent," a support-free assumption that Mapp and subsequent cases make clear does not embody the Court's normal approach to difficult questions of Fourth Amendment law.

[Id. at 611 (citations omitted) (alterations in original).]

The dissenters traced the history of the knock-and-announce rule, explained the legal purpose underlying the exclusionary rule, and concluded—like New Jersey law—that the knock-and-announce rule "forms a part of the reasonableness inquiry under the Fourth Amendment." Id. at 606 (quoting Wilson v. Arkansas, 514 U.S. 927, 929 (1995)). The dissenters unequivocally declared that a breach of the rule—like in our State—renders the search and seizure of the evidence unconstitutional. Id. at 608.

> [S]eparating the "manner of entry" from the related search slices the violation too finely. As noted, . . . we have described a failure to comply with the knock-and-announce rule, not as an independently unlawful event, but as a factor that renders the search "constitutionally defective." Wilson, 514 U.S.[] at 936; see also id.[] at 934 (compliance with the knock-and-announce requirement is one of the "factors to be considered in assessing the reasonableness of a search or seizure" (emphasis added)); Ker v. California, 374 U.S. 23, 53 (1963) (opinion of Brennan, J.) ("[A] lawful entry is the indispensable predicate of a reasonable search.").

[Id. at 615 (parallel citations omitted).]

The dissenters also thoroughly explained why the inevitable discovery doctrine, the independent source doctrine, and the attenuation doctrine did not apply. Id. at 614-18; 625-29.

Before and after Hudson, other states have grappled with the legal issue presented here. Courts in five states have followed Hudson and held that their state constitutions do not mandate the application of the exclusionary rule as a remedy for a violation of the knock-and-announce rule.[10] An intermediate appellate court in Pennsylvania held that its state constitution required suppression of evidence for violations of the knock-and-announce requirement.[11] Two other states determined that suppression was unnecessary because the evidence sought to be suppressed was purportedly not obtained "as a result of" the knock-and-announce violation.[12] And the high courts in other states have held that their state statute required suppression of the evidence.[13]

---

[10] State v. Roberson, 225 P.3d 1156, 1157 (Ariz. Ct. App. 2010); Lane v. State, 513 S.W.3d 230, 235-36 (Ark. 2017); In re Frank S., 47 Cal. Rptr. 3d 320, 324 (Cal. Ct. App. 2006); People v. Glorioso, 924 N.E.2d 1153, 1154-55 (Ill. App. Ct. 2010); State v. Bremby, 90 N.E.3d 891, 900-01 (Ohio 2017).

[11] Commonwealth v. Frederick, 124 A.3d 748, 757 (Pa. Super. Ct. 2015) (citing Commonwealth v. Crompton, 682 A.2d 286, 289-90 (Pa. 1996)).

[12] See State v. White, 646 S.E.2d 609, 612-13 (N.C. Ct. App. 2007) (interpreting a statute which provides that evidence must be suppressed if "if is obtained as a result of a substantial violation" of the state knock-and-announce statute); see also State v. Callaghan, 222 S.W.3d 610, 615-16 (Tex. Crim. App.

As we said, we do not question the Supreme Court's interpretation of the Fourth Amendment, or other jurisdictions' interpretations of their respective state statutes, constitutions, and/or the Fourth Amendment. Instead, our holding, that the exclusionary rule applies to unjustified, flagrant knock-and-announce violations, is rooted in Article I, Paragraph 7 of the New Jersey Constitution and our State's rich search and seizure jurisprudence. Our Constitution provides more expansive protections against unreasonable searches and seizures than the Fourth Amendment as interpreted by <u>Hudson</u>. And we have an obligation to ensure those protections are not eroded through the abandonment of the deterrence provided by the exclusionary rule.

---

2007) (finding that the causation analysis in <u>Hudson</u> applied to the state's statutory exclusionary rule and did not require the suppression of evidence).

[13] <u>See</u> <u>State v. Cable</u>, 51 So. 3d 434, 437-42 (Fla. 2010) (citing its prior decision in <u>Benefield v. State</u>, 160 So. 2d 706 (Fla. 1964), and finding <u>Hudson</u> does not prohibit the state from providing the exclusionary rule for violations of the state knock-and-announce statute); <u>see also</u> <u>Berumen v. State</u>, 182 P.3d 635, 637 (Alaska Ct. App. 2008) (holding <u>Hudson</u> inapplicable to a serious violation of the state's knock-and-announce statute and concluding suppression of evidence is the appropriate remedy); <u>cf.</u> <u>Hourin v. State</u>, 804 S.E.2d 388, 396-97 (Ga. 2017) (noting that the statute allowing for suppression of evidence when "the warrant was illegally executed" might apply to violations of the knock-and-announce rule, but possibly only to violations accompanied by force, and remanding for consideration of the force used during entry).

B.

Before analyzing the contentions raised on appeal, we briefly address our obligation to apply the heightened constitutional guarantees afforded under the Constitution of New Jersey. We live in a nation governed by federal and state laws. As to protections against unreasonable searches and seizures, the texts of the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution are identical.[14] The Fourth Amendment, as interpreted by the United States Supreme Court, sets forth the minimum guarantees. No state can reduce those liberty rights, but more expansive constitutional protections may be afforded under state law—and New Jersey has done just that. In declining to adopt a Hudson exception to the exclusionary rule, we therefore apply the search and seizure jurisprudential trail already blazed under the New Jersey Constitution. We do so for four separate equally dispositive reasons.

First, the United States Supreme Court has clearly recognized the sovereign right of each state to incorporate individual liberties "more

---

[14] "The Fourth Amendment and Article I, Paragraph 7 of the State Constitution guarantee individuals the right to be free from unreasonable searches and seizures. Both provide that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" Carter, 247 N.J. at 524 (quoting U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7).

expansive than those conferred by the Federal Constitution." Pruneyard Shopping Ctr. v. Robins, 447 U.S. 74, 81 (1980); see Carter, 247 N.J. at 529 (citing Stewart G. Pollock, State Constitutions as Separate Sources of Fundamental Rights, 35 Rutgers L. Rev. 707 (1983) (throughout); William J. Brennan, Jr., State Constitutions and the Protection of Individual Rights, 90 Harv. L. Rev. 489 (1977) (throughout); Jeffrey S. Sutton, 51 Imperfect Solutions: States and the Making of American Constitutional Law, 7-10, 16-21 (2018)).[15] Although there is dual sovereignty between the federal and state governments rendering each sovereign "with respect to the objects committed to it, and neither sovereign with respect to the objects committed to the other," McCulloch v. Maryland, 17 U.S. 316, 410 (1819), the governments operate in different spheres of authority. Ernest A. Young, The Puzzling Persistence of Dual Federalism, in Federalism and Subsidiarity 34, 36-38 (James E. Fleming & Jacob T. Levy eds., 2014)[16] (citing Alpheus Thomas Mason, The Role of the Court, in Federalism: Infinite Variety in Theory and Practice (Valerie A. Earle

---

[15] See also Judgment Calls with the Honorable David F. Levi, Episode 1: Judge Jeffrey Sutton, Bolch Judicial Institute Duke Law School (Jan. 17, 2020) https://judicialstudies.duke.edu/videos-and-podcasts/judgment-calls/ (discussing the important role state constitutions play in protecting personal rights).

[16] Available at https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article= 5365&context=faculty_scholarship.

ed., 1968) and Anthony J. Bellia Jr., Federalism 183 (2010) (explaining "[t]he dual federalism paradigm understands federal and state governments to operate in different spheres of authority")).  Thus, it is not only appropriate to apply New Jersey's Article I, Paragraph 7 greater constitutional guarantees of individual liberty beyond those afforded by the Fourth Amendment, but it is necessary to give effect to the New Jersey Supreme Court's expansive interpretation of those rights under our State Constitution.

The genius and strength of the federal system is that it provides a "double source of protection for the rights of our citizens."  Brennan, 90 Harv. L. Rev, at 503.  The consequence of that added protection can be—like here—stronger state constitutional safeguards of fundamental rights.  Our State Constitution is a separate source of liberty, and we must apply it.

Second, there is strength in diversity and competing ideas.  As Justice Louis D. Brandeis explained, independent state supreme courts can "serve as a laboratory" testing their state constitutions that may better serve the people of those states.  New State Ice Co. v. Liebmann, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting); see also State v. Hunt, 91 N.J. 338, 356 (2002) (Pashman, J., concurring) (explaining state constitutional interpretation enables a "healthy debate" over the interpretation of federal law).  The New Jersey Supreme Court's well-developed search and seizure jurisprudence exemplifies this benefit.

Third, there are structural differences between the federal and state constitutions. Justice Morris Pashman pointed out that New Jersey does not "share the strong limitations perceived by [the United States Supreme Court] in its ability to enforce constitutional protections aggressively." Hunt, 91 N.J. at 357. The limitations come from the structure of our federal system, where the United States Supreme Court is the "final arbiter of at least the minimum scope of constitutional rights for a vastly diverse nation." Ibid. The structural differences enable "many important governmental roles and decisions [to be] reserved for the states." Ibid. As to the structural differences, the United States Constitution is a "grant of enumerated powers to the federal government," and our State Constitution "serves only to limit the sovereign power." Id. at 365. Thus, "the explicit affirmation of fundamental rights in our [State] Constitution can be seen as a guarantee of those rights and not as a restriction on them." Id. at 366. Still, although these differences exist, federal precedent "in areas addressed by similar provisions in our state constitutions can be meaningful and instructive." Id. at 363.

Fourth, our State's sound tradition and powerful precedent of providing greater protection against unreasonable searches and seizures than those guaranteed by the Fourth Amendment are particularly relevant here. Chief Justice Stuart Rabner recently reiterated that New Jersey's Constitution "provides greater protection against unreasonable searches and seizures than the Fourth

A-0580-20

Amendment." Carter, 247 N.J. at 504. Indeed, our State precedent demonstrates multiple occasions where our Supreme Court has found—under Article I, Paragraph 7—that New Jersey's Constitution affords greater protection against unreasonable searches and seizures than the Fourth Amendment.

For example, as to privacy rights, the New Jersey Supreme Court has interpreted our state constitutional safeguards more broadly than the United States Supreme Court. See id. at 504, 532 (declining to follow Heien v. North Carolina, 574 U.S. 54 (2014), and rejecting a reasonable mistake of law exception under the New Jersey Constitution); State v. Novembrino, 105 N.J. 95, 157-58 (1987) (declining to follow United States v. Leon, 468 U.S. 897 (1984), and rejecting a good faith exception to Article I, Paragraph 7); State v. Earls, 214 N.J. 564, 588 (2013) (declining to follow United States v. Jones, 565 U.S. 400 (2012), and requiring a search warrant for cell phone location data); State v. Reid, 194 N.J. 386, 389 (2008) (declining to follow and extend the principles in Smith v. Maryland, 442 U.S. 735 (1979) and United States v. Miller, 425 U.S. 435 (1976), and recognizing a reasonable expectation of privacy in internet subscriber information); State v. McAllister, 184 N.J. 17, 19 (2005) (declining to follow Miller, 425 U.S. at 435, and finding a reasonable expectation of privacy in bank records); State v. Mollica, 114 N.J.

20

329, 344-45 (1989) (declining to follow <u>Smith</u>, 442 U.S. 735, and finding a privacy interest in hotel-room telephone toll or billing records); <u>State v. Johnson</u>, 68 N.J. 349, 353-54 (1975) (declining to follow <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973), and requiring the State to prove that a person has "knowledge of the right to refuse consent" to establish consent to search); <u>State v. Hempele</u>, 120 N.J. 182, 198 (1990) (declining to follow <u>California v. Greenwood</u>, 486 U.S. 35 (1988), and concluding there is a reasonable expectation of privacy in opaque containers left at the curb for collection); <u>Hunt</u>, 91 N.J. at 347-49 (declining to follow <u>Smith</u>, 442 U.S. 735, and finding a reasonable expectation of privacy in telephone numbers called).

The New Jersey Supreme Court has also recognized a broader concept of what constitutes a seizure. <u>See</u> <u>State v. Tucker</u>, 136 N.J. 158, 165 (1994) (declining to follow <u>California v. Hodari D.</u>, 499 U.S. 621 (1991), and providing a broader definition than was found in the Fourth Amendment). Greater individual protections exist as to searching automobiles. <u>See</u> <u>State v. Pierce</u>, 136 N.J. 184, 208 (1994) (declining to follow <u>New York v. Belton</u>, 453 U.S. 454 (1981), and recognizing a warrantless arrest for a motor vehicle offense does not authorize the search of a vehicle's passenger compartment); <u>see also</u> <u>State v. Carty</u>, 170 N.J. 632, 635, <u>modified on other grounds</u>, 174 N.J. 351 (2002) (declining to follow <u>Schneckloth</u>, 412 U.S. 218, and finding that

21 <span style="float:right">A-0580-20</span>

there must be a reasonable and articulable suspicion of criminal wrongdoing as a prerequisite to requesting consent to search a vehicle after a routine stop for a motor vehicle violation). And New Jersey has applied a heavier burden to demonstrate the validity of a non-custodial consent to search. See Johnson, 68 N.J. at 353-54.

As we previously pointed out, importantly, "[t]his broad interpretation of our [S]tate [C]onstitution extends not only to the privacy rights embraced by N.J. Const. art. I, ¶ 7, but also to the vindication of those rights." Rodriguez, 399 N.J. Super. at 204. Contrary to Rakas v. Illinois, 439 U.S. 128 (1978), our Supreme Court has recognized that an accused has automatic standing to seek the suppression of evidence seized in violation of N.J. Const. art. I, ¶ 7. See State v. Brown, 216 N.J. 508, 528 (2014) (explaining that "[f]or standing purposes, Article I, Paragraph 7 provides broader protection to the privacy rights of New Jersey citizens than the Fourth Amendment"); State v. Johnson, 193 N.J. 528, 542-43 (2008); State v. Alston, 88 N.J. 211, 228 (1981).

The New Jersey Supreme Court recently reiterated that our State Constitution "is a source of fundamental rights independent of the United States Constitution." State v. Melvin, ___ N.J. ___ (2021) (slip op. at 35) (citing State v. Gilmore, 103 N.J. 508, 522-23 (1986)). The Federal Constitution, our Supreme Court explained, "provides the floor for

constitutional protections, and our own Constitution affords greater protection for individual rights than its federal counterpart." Ibid. These principles guide our analysis.

## II.

The knock-and-announce constitutional requirement and exclusionary rule are longstanding legal doctrines. As to the former, the manner of entry into a residence is significant and a critical predicate of a reasonable search and seizure. As to the latter, entry without prior announcement is constitutionally defective, and a knock-and-announce warrant violation is considered warrantless and presumed invalid. See State v. Goodson, 316 N.J. Super. 296, 305-06 (App. Div. 1998) (importantly explaining over two decades ago that a knock-and-announce warrant violation renders the search and seizure warrantless and, therefore, presumed invalid).

### A.

### Knock-and-Announce Rule

There are two types of warrants police can request: a no-knock warrant[17] and a knock-and-announce warrant. Here, the lead detective (the detective)

---

[17] As we previously pointed out, to justify a no-knock warrant, a police officer, under the totality of the circumstances and based on his or her experience and knowledge, "must have a reasonable, particularized suspicion that a no-knock entry is required to prevent the destruction of evidence, to

specifically requested a warrant with a knock-and-announce requirement. At the motion to suppress hearing, the detective explained the knock-and-announce requirement he had requested meant that the police had to "knock-and-announce [their] presence [before] enter[ing]" the apartment. Relying on the detective's affidavit, a judge issued the warrant, which explicitly directed them to enter by "first knocking and identifying the officers as police officers and the purpose for being at the premises."[18]

The detective, who conceded that there were no exigent circumstances to justify ignoring the requirement, admitted that when he arrived at the front door with two other officers, they did not knock and announce their presence, they opened the unlocked door, and then entered. At that point, one of the officers said "hello," which the judge found was said in a "normal tone," and Caronna replied, "Babe?" The police inexplicably remained silent and did not respond to "Babe?" Although they could have announced they were police

_____

protect the officer's safety, or to effectuate the arrest or seizure of evidence." Johnson, 168 N.J. 608, 619 (2001); see also Robinson, 200 N.J. at 14. The police here did not request a no-knock warrant.

[18] If a judge issues a search warrant with a knock-and-announce requirement, officers can ignore the requirement to knock and announce if exigent circumstances exist. Johnson, 168 N.J. at 621; State v. Fair, 45 N.J. 77, 86 (1965). But as the State concedes, no exigent circumstances existed and there was no justification for the violation of the warrant's knock-and-announce requirement.

officers and were there to search the apartment, they climbed the stairs and entered her bedroom. Before identifying themselves, one officer said to Caronna "How are you doing, what's going on?"[19] She was disoriented by the encounter. They then announced for the first time they were police officers and were there to execute the warrant.

The origins of the idea that law enforcement officers knock and announce their presence before entering a dwelling can be traced to around the time of the Magna Carta. Wilson, 514 U.S. at 932 n. 2. Clearly, it predates state and federal constitutions. The rule was pronounced about 400 years ago in Semayne's Case, 77 Eng. Rep. 194 (K.B. 1603); see also Miller v. United States, 357 U.S. 301, 308 (1958) (referring to Semayne's Case and explaining that "the breaking [into a dwelling] was unlawful where the officer failed first to state his authority and purpose for demanding admission").

Like New Jersey, the United States Supreme Court has recognized "that the reasonableness of a search of a dwelling may depend in part on whether

---

[19] At our request, the assistant prosecutor provided to all counsel, amici, and the Clerk of the Appellate Division a disc of recordings from the body cameras worn by the officers depicting the arrest of Collado and their entry into Caronna's apartment. The disc was marked S-1 into evidence at the motion to suppress hearing. The detective narrated part of S-1 during the hearing, including up to the point where they entered the bedroom and announced their presence. At the hearing, the assistant prosecutor remarked to counsel and the motion judge "I have no objection to watch[ing] more of [S-1]."

law enforcement officers announce[] their presence and authority prior to entering," and "that the method of an officer's entry into a dwelling 'is an element of the reasonableness inquiry under the Fourth Amendment.'" State v. Johnson, 168 N.J. at 616 (quoting Wilson, 514 U.S. at 931, 934). Hudson did not change this bedrock principle. The rationale undergirding the knock-and-announce rule is compelling. One commentator put it this way:

> The constitutional requirement of announcement serves a number of most worthwhile purposes: (i) "decreasing the potential for violence"; (ii) "protection of privacy"; and (iii) "preventing the physical destruction of property." As to the first of these, it has been cogently noted that an "unannounced breaking and entering into a home could quite easily lead an individual to believe that his safety was in peril and cause him to take defensive measures which he otherwise would not have taken had he known that a warrant had been issued to search his home." As to the second, notice minimizes the chance of entry of the wrong premises by mistake and the consequent subjecting of innocent persons to "the shock, fright or embarrassment attendant upon an unannounced police intrusion." . . . The third purpose is equally valid, for quite obviously a person should ordinarily "be allowed the opportunity to voluntarily admit the officer into his home" instead of suffering damage to his property.
>
> [Johnson, 168 N.J. at 616 (alteration in original) (quoting 2 Wayne R. LaFave, Search and Seizure § 4.8(a) at 599-600 (4th ed. 1984) (footnotes omitted)).]

The constitutional requirement of announcement, therefore, serves worthwhile purposes for hundreds of years that cannot be subject to "erosion

26

by indifference or contempt."  Hudson, 547 U.S. at 603 (Kennedy, J. concurring).  The requirement is essential because of the potential for violence and the safety of law enforcement and occupants as the officers enter the dwelling; it protects important privacy interests; and it prevents physical destruction to property.  In New Jersey, the manner of entry into a residence is—and has been—a significant and critical predicate of a reasonable search and seizure.  See Goodson, 316 N.J. Super. at 305-06.

B.

Exclusionary Rule

The core purpose of the exclusionary rule is "deterrence of future unlawful police conduct."  State v. Shannon, 222 N.J. 576, 597 (2015).  The United States Supreme Court first applied the exclusionary rule in Weeks v. United States, 232 U.S. 383, 398 (1914).  In later holding that the exclusionary rule is applicable to the states through the Due Process Clause of the Fourteenth Amendment, the United States Supreme Court noted the exclusionary rule is "a clear, specific, and constitutionally required—even if judicially implied—deterrent safeguard without insistence upon which the Fourth Amendment would have been reduced to a form of words."  Mapp, 367 U.S. at 648 (internal quotation marks and citation omitted).

27

The Court recognized that the purpose of the exclusionary rule "is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." Id. at 656 (quoting Elkins v. United States, 364 U.S. 206, 217 (1960) (emphasizing "[t]he [exclusionary] rule is calculated to prevent, not to repair" constitutional violations)). Since Mapp, the United States Supreme Court pared back application of the exclusionary rule. See Shannon, 222 N.J. at 598-99 (compiling examples). New Jersey jurisprudence has not taken the same approach and has instead recognized that the exclusionary rule serves an important purpose in New Jersey beyond deterring police from constitutional violations.

The exclusionary rule not only deters constitutional violations, but also provides an "indispensable mechanism for vindicating the constitutional right to be free from unreasonable searches." Carter, 247 N.J. at 530 (quoting Novembrino, 105 N.J. at 157-58). Indeed, Justice Lee Solomon explained that "[w]ith some exception, in the fifty-four years since this Court first addressed the exclusionary rule in State v. Valentin, 36 N.J. 41 [] (1961), our courts have resisted the federal trend towards erosion of the exclusionary rule." Shannon, 222 N.J. at 600-01. The exclusionary rule "uphold[s] judicial integrity" by informing the public that "our courts will not provide a forum for evidence

procured by unconstitutional means." State v. Williams, 192 N.J. 1, 14 (2007). The suppression of evidence "sends the strongest possible message that constitutional misconduct will not be tolerated and therefore is intended to encourage fidelity to the law." Ibid. We do not apply the rule indiscriminately. State v. Hamlett, 449 N.J. Super. 159, 177 (App. Div. 2017) (explaining that New Jersey courts apply the exclusionary rule "only to evidence obtained in violation of a defendant's constitutional rights"). "Suppression of evidence . . . has always been our last resort, not our first impulse." State v. Presley, 436 N.J. Super. 440, 459 (App. Div. 2014) (quoting State v. Gioe, 401 N.J. Super. 331, 339 (App. Div. 2008)). We apply the exclusionary rule when the benefits of deterrence outweigh its substantial costs. Gioe, 401 N.J. Super. at 339.

## III.

With that background in place, we now turn to the heart of this appeal: whether the exclusionary rule should be applied to ensure the continued protection of the broad safeguards against unreasonable searches and seizures guaranteed by Article I, Paragraph 7 where police unjustifiably violate a knock-and-announce requirement contained in a search warrant.

## A.

The State argues that, under the circumstances presented here, the exclusionary rule need not be applied to protect the constitutional guarantees against unreasonable searches and seizures contained in Article I, Paragraph 7 and the Fourth Amendment. It maintains that "[t]here are other means to address improper police behavior short of excluding legally seized evidence." The State requests that we adopt Justice Scalia's reasoning in Hudson and that we not follow Johnson, which it asserts is distinguishable and pre-Hudson. The State acknowledges that "police accountability and reform are currently in the political and legal forefront," and points out that the New Jersey AG announced in June 2020 he was "ending the long-standing practice of shielding the identities of law enforcement officers who receive major discipline or misconduct." Therefore, the State contends that deterring violations of the knock-and-announce requirement will be realized by police transparency and accountability, and maintains suppression is unwarranted. The State further contends that because the police had probable cause to search the apartment, the violation is too attenuated to suppress the drugs; that is, the illegal manner of entry was not the but-for cause of obtaining the evidence.

The AG contends the suppression of evidence was "counterproductive" because the officers would have eventually seized the evidence if they had

acted legally and complied with the knock-and-announce requirement. The AG argues that the evidence seized is not the fruit of the poisonous tree, and even if it is, in the knock-and-announce context, the exclusionary rule is "unlikely to deter undesirable police conduct." The AG agrees with the State that to deter knock-and-announce violations, victims of these violations can bring civil suits against the officers seeking money damages or they can pursue disciplinary charges with IA.

But the AG asserts that the best remedy for a knock-and-announce violation is civil damages against the officers because they provide restitution to "innocent people whose interests have been violated by officers' execution of a warrant in an improper manner." The AG argues that civil suits will incentivize police departments to "train their officers properly" if "state[]and[] local governments and individual officers [are forced] to pay for police wrongdoing."[20] Citing out-of-state cases,[21] the AG contends further that the

---

[20] Here, there is no suggestion that the officers were improperly trained. The lead detective who requested a warrant containing the knock-and-announce requirement and who was at the front door himself, testified that he knew they had to comply with the warrant mandate by knocking-and-announcing their presence.

[21] E.g., Trent v. Wade, 776 F.3d 368, 383 (5th Cir. 2015).

A-0580-20

defense of qualified immunity will be unavailable to officers because the knock-and-announce rule is a "'clearly established' right."[22]

The AG asserts that compensatory damages against officers can be supplemented by punitive damages to "deter police misconduct." As to disciplinary actions, the AG acknowledges that Justice Scalia's reference to reforms in the training of police officers seemed "conclusory," but on this point, the AG produced for us secondary sources from 2011 and 2013 suggesting that police chiefs around the country believe internal discipline is a greater deterrent to knock-and-announce violations than suppression of evidence.

Defendants argue that the officers' manner of entry into the apartment must be considered when evaluating the reasonableness of the search. They maintain that the officers' unjustified violation of the knock-and-announce requirement makes the search unreasonable and that Article I, Paragraph 7 provides stronger safeguards against unreasonable searches and seizures. They say it is objectively unreasonable for officers to ignore a search warrant directing them to knock and announce their presence before entering a

---

[22] Whether a victim of an unlawful entry into a residence can overcome the defense of qualified immunity is not before us. The sole legal question here pertains to the propriety of suppressing drugs seized after a constitutionally defective, unjustified, and objectively unreasonable violation of a knock-and-announce warrant.

dwelling. Defendants also contend the illegality of the entry and subsequent search is attributed solely to the police violation, which defendants emphasize the officers here could have easily avoided since there were no exigent circumstances or other reasons to justify the violation. Defendants argue suppression of the evidence deters police from violating the warrant, which will promote the compelling laudatory reasons for the knock-and-announce rule and upholds Article I, Paragraph 7's guarantee against unreasonable searches and seizures. They conclude the seized evidence is the fruit of the poisonous tree.

The ACLU emphasizes two critical roles of the exclusionary rule: deterring police misconduct and vindicating the rights of those who fall victim to that misconduct. It argues that exempting knock-and-announce violations from the exclusionary rule encourages disobedience of judicial orders to the detriment of the privacy rights, property rights, and safety of our citizens. The ACLU further contends the exclusionary rule applies to unreasonable entries for three reasons: it effectively deters police from performing unreasonable searches and seizures, unlike the State's referenced remedies of civil rights actions or disciplinary charges; it serves laudatory purposes beyond deterrence, such as protecting against unreasonable searches; and, without the exclusionary rule, the Court's previous rejection of a good-faith exception to

33

the warrant requirement would amount to an absurd result: it is illogical to reject the exclusionary rule when police act in good faith, but then impose a Hudson exception when the police knowingly ignore the warrant mandate without justification.

The ACDL-NJ asserts suppression of the evidence is the only remedy for knock-and-announce violations in New Jersey. The ACDL-NJ argues that suppression protects important existing rights and policies; the police here acted unlawfully; and Hudson does not govern the interpretation of Article I, Paragraph 7. Instead, it argues that Johnson, 168 N.J. 608 is the controlling precedent interpreting the application of exclusionary rule to a violation of a knock-and-announce requirement, and it requires suppression. The ACDL-NJ contends that potential civil rights suits or disciplinary charges will not deter police from knock-and-announce violations. A civil lawsuit will take years to litigate, consume enormous resources for minimal rewards, and most likely will be handled by pro se victims because monetary damages are nominal. According to the ACDL-NJ, IA disciplinary charges are also unworkable because "police do not adequately police themselves."[23] As to the importance

---

[23] Caronna argues a Department of Justice investigation into alleged police misconduct revealed hundreds of violations leading to the creation of a Civilian Complaint Review Board (CCRB) in the City of Newark. But Caronna contends that because the CCRB is without subpoena power and is

of the knock-and-announce requirement and the need to protect lives, the ACDL-NJ—and defendants—point to the tragic death of Breonna Taylor in 2020.[24] Finally, eliminating suppression as a remedy effectively minimizes the requirement in the warrant to knock and announce their presence.

Although Hudson was decided fifteen years ago, our Supreme Court "has not embraced Hudson's approach to date." State v. Rockford, 213 N.J. 424, 461 (2013) (LaVecchia, J., dissenting). In Johnson, a pre-Hudson case, the Court noted that "[o]ur State jurisprudence generally has mirrored federal case law in respect of the knock-and-announce rule," 168 N.J. at 617, and assumed that suppression would be the appropriate remedy under both the federal and state constitutions, id. at 622-23, 625-26. See also Rodriguez, 399 N.J. Super. at 192 (strongly opining that Hudson should not be adopted in this state).

---

unable to investigate civilian complaints simultaneously while IA investigates, Fraternal Order of Police, Newark Lodge No. 12 v. City of Newark, 244 N.J. 75, 80-81, 89 (2020), "internal discipline" and "citizen review" do not withstand reasonable scrutiny and cannot, therefore, act as a meaningful deterrent to the police conduct here.

[24] See Jelani Jefferson Exum, Presumed Punishable: Sentencing on the Streets and the Need to Protect Black Lives Through a Reinvigoration of the Presumption of Innocence, 64 How. L.J. 301, 339-46 (2021) (describing the factual circumstances of Breonna Taylor's death); Richard A. Oppel Jr., Derrick Bryson Taylor, and Nicholas Bogel-Burroughs, What to Know About Breonna Taylor's Death, N.Y. Times (Apr. 26, 2021), https://www.nytimes.com/article/breonna-taylor-police.html (the same).

B.

Applying New Jersey law, we hold that the exclusionary rule bars the admission of evidence seized following an unjustifiable entry into a dwelling in violation of a knock-and-announce requirement contained in a search warrant.

(1)

(i)

Under our State Constitution, as interpreted by the Supreme Court of New Jersey, "the inquiry into the <u>reasonableness</u> of a residential search <u>entails scrutiny of the steps taken by officers to enter and search a home</u>." <u>Rockford</u>, 213 N.J. at 441 (citing <u>Johnson</u>, 168 N.J. at 616) (emphasis added). Our Supreme Court has held that if the police action in executing a warrant is objectively reasonable, then there is no constitutional violation. <u>Ibid.</u> It is settled that in evaluating the constitutionality of police conduct in executing a warrant, "the basic test under . . . Article I, Paragraph 7, of the New Jersey Constitution is . . . <u>was the [police] conduct objectively reasonable</u> in light of 'the facts known to the law enforcement officer at the time of the search.'" <u>State v. Handy</u>, 206 N.J. 39, 46-47 (2011) (emphasis added) (quoting <u>State v. Bruzzese</u>, 94 N.J. 210, 221 (1983)).

Under the facts of this case, where there is no justification for violating the warrant requirement mandating that the officers knock and announce their presence, we conclude the entry was objectively unreasonable, rendering the search and seizure constitutionally defective. See Wilson, 514 U.S. at 936 (acknowledging circumstances that make entry without prior announcement constitutionally defective); Fair, 45 N.J. at 86-87 (same); see also Goodson, 316 N.J. Super. at 305-06 (stating that a knock-and-announce warrant violation renders the search and seizure warrantless and, therefore, presumed invalid).

The motion judge's findings are supported by substantial credible evidence. The police applied for and received the search warrant to search the apartment. Collado was the target of the warrant after police orchestrated three controlled buys between him and a confidential informant, two of which Collado conducted from the apartment. In December, around 4:30 to 5:00 p.m., the officers saw Collado about fifty yards from the apartment. When they approached him, Collado told the officers "I don't live around here." They detained him on the spot and proceeded to execute the warrant. The judge found that the police had reason to believe that Caronna resided in the apartment because her driver's license had the same address as the apartment building. When they arrived at the front door it was closed and unlocked. The judge found:

The police then just . . . opened the door. They did not – there's no dispute that they did not knock on the door first, nor did they announce their presence before they . . . opened the door and entered [the two-story apartment].

. . . .

[A]fter they entered through the door, one of the [o]fficers . . . in a normal tone [(based on the judge hearing the video from the body camera)] said once hello. . . . [Caronna said "Babe?"] [The] police climbed the staircase [to the second floor of the apartment and] observed the co-defendant Caronna . . . in her bedroom.

. . . .

[T]he risk of harm . . . was actually exacerbated by the police only saying [hello] once in a normal tone as they entered the residence . . . . There was [no evidence] that the police made any reasonable person believe that [they] were entering the structure or for what [] purpose.

. . . .

The police could not know if someone else occupied [the apartment] or, in fact, who was the lawful occupant of the residence.

. . . .

They never did any independent investigation to find out who was actually the lawful occupant of the residence when they knew [Collado] had . . . a different address [than the apartment]. [And] they knew [Caronna's] license [listed the apartment building] . . . [and] that the police knew or should

have known that [Caronna] was a potential lawful occupant of [the apartment].

. . . .

[T]here was no legal justification for the police to enter the [apartment] in the manner in which they did.[25]

The judge found, and it is conceded, that there was no evidence that the police were in any danger and that there was no exigency justifying ignoring the knock-and-announce requirement. Hence, their conduct was not objectively reasonable, it constituted a flagrant violation of the search warrant's knock-and-announce requirement, and the subsequent search and seizure are constitutionally defective.

(ii)

The police ignored the court-ordered search warrant requirement to knock-and-announce their presence. The terms of the issued warrant must be "strictly respected." Rockford, 213 N.J. at 441. A search warrant containing a knock-and-announce requirement does not authorize police—absent exigent circumstances—to ignore the obligation to knock and announce their presence before entering the dwelling. Ignoring the requirement—like under the facts

---

[25] The detective testified he had a battering ram and police shield with him, but admitted that the police utilized neither, which further supports the State's concession that there were no exigencies warranting or justifying the manner of entry into the apartment.

of this case—"could lead to the unreasonable execution of the judicially authorized warrant." Id. at 453-54 (LaVecchia, J., dissenting).  Therefore, the method of entry into the dwelling is an important factor to consider when evaluating the reasonableness of police action and the applicability of the exclusionary rule.  See Johnson, 168 N.J. at 616 (excluding evidence secured by a no-knock entry where such means of entry had not been authorized by the warrant-issuing court, noting the importance of the longstanding principle that "the method of an officer's entry into a dwelling is an 'element of the reasonableness inquiry'") (quoting Wilson, 514 U.S. at 934).

(2)

The exclusionary rule is the proper remedy.  It effectively deters against unconstitutional, unreasonable, and illegal searches and seizures, and importantly, suppression protects against violations of the rights of New Jersey citizens and upholds the rule of law and integrity of our judicial system.  In reaching this conclusion, we do not apply the rule indiscriminately.  Instead, we have applied the exclusionary rule because the benefits of deterrence outweigh its substantial costs.  It deters unlawful, flagrant police conduct; compels respect for the constitutional guaranty against unreasonable searches and seizures by removing the incentive to disregard the knock-and-announce rule; it vindicates the constitutional right to be free from unreasonable

searches; and it upholds judicial integrity by informing the public that our courts will not provide a forum for evidence procured by unconstitutional means. The New Jersey Constitution—at its core—stands for "critical principles such as the rule of law and equal justice under the law." Carter, 247 N.J. at 531.

We reach this conclusion by emphasizing that we "serve the criminal justice system best by enforcing clear and uniform rules whenever appropriate under the circumstances." Johnson, 168 N.J. at 623 (citing State v. Lark, 163 N.J. 294, 297 (2000)). Unlike under the Fourth Amendment, as interpreted by the United States Supreme Court, the Supreme Court of New Jersey, applying our own Constitution, recently declined adoption of a mistake of law exception to the exclusionary rule, see Carter, 247 N.J at 532, and has long since declined adoption of a good faith exception to the exclusionary rule, see Novembrino, 105 N.J. at 157-58. It did so mindful of the high price extracted by suppression of evidence. We likewise decline to adopt a Hudson exception to the exclusionary rule.

The knock-and-announce rule protects "human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident." Hudson, 547 U.S. at 594. Suffice it to say that the rule safeguards against violence to occupants of the residence, and importantly,

41

likewise protects police officers themselves.  In this instance, the officers could have knocked and announced their presence; fortunately, there were no injuries.

Any other remedy undermines the practical longstanding values of the constitutional knock-and-announce protection and the dual purposes of the exclusionary rule: to deter police misconduct <u>and</u> vindicate the constitutional right to be free from unreasonable searches.  Given our historically consistent expansive interpretation of the protections afforded under Article I, Paragraph 7, like in <u>Novembrino</u> and <u>Carter</u>, we decline to carve out an exception to the exclusionary rule.

We need not look further than the facts of this case to show the ineffectiveness of the remedies proposed by the State and AG.  The officers knew or should have known that a victim of such a violation could file a Section 1983 civil suit against them.  Indeed, as the AG pointed out, the knock-and-announce rule is a "clearly established" right.  But the police violated the rule anyway.  They must have also known that a victim of the violation could bring a civilian complaint seeking disciplinary charges.  But they violated the rule anyway.  And, finally, two of the officers wore body cameras.  And they violated the rule anyway.

A-0580-20

Notably, Justice Scalia found that in addition to the substantial social costs in excluding relevant incriminating evidence, application of the exclusionary rule to a "knock-and-announce violation would generate a constant flood of alleged failures to observe the rule." Hudson, 547 U.S. at 595. However, with the expanded use of body cameras post-Hudson, violations of the knock and announce rule, as in this case, can be readily determined and would not require extensive litigation.[26]

### IV.

Finally, no exceptions to the exclusionary rule apply here. We nevertheless address the inapplicability of the inevitable discovery, independent source, and attenuation doctrines. Given the flagrant conduct here, application of these exceptions would contravene the rule of law and the integrity of New Jersey's judicial system by implicitly condoning unreasonable searches and seizures.

### A.

### (1)

The inevitable discovery doctrine generally permits admission of evidence resulting from an illegal search where the prosecution can show that it would have discovered the evidence "had no illegality occurred." State v. Sugar, 100 N.J. 214,

---

[26] Indeed, the body cameras here served a valuable purpose of documenting the violation.

238 (1985) (Sugar II). Its purpose is to "prevent[ ] the prosecution from being in a better position than if the illegal conduct had not taken place" rather than to "punish the prosecution by putting it in a worse place." State v. Camey, 239 N.J. 282, 302 (2019) (citing Sugar II, 100 N.J. at 237). The State must demonstrate that:

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [Sugar II, 100 N.J. at 238.]

The State is not required "[to] demonstrate the exact circumstances of the evidence's discovery." Camey, 239 N.J. at 302 (quoting State v. Maltese, 222 N.J. 525, 552 (2015)). "[T]he State need only present facts or elements—proving each such fact or element by a preponderance of the evidence—that in combination clearly and convincingly establish the ultimate fact and lead to the conclusion that the evidence would be inevitably discovered." Ibid. (quoting State v. Sugar, 108 N.J. 151, 159 (1987) (Sugar III)).

(2)

The independent source doctrine, which is related to the inevitable discovery doctrine, "allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." State v. Holland, 176 N.J. 344, 348 (2003) (quoting Nix v. Williams, 467 U.S. 431, 443 (1984)). The doctrine has three prongs:

> First, the State must demonstrate that probable cause existed to conduct the challenged search without the unlawfully obtained information. It must make that showing by relying on factors wholly independent from the knowledge, evidence, or other information acquired as a result of the prior illegal search. Second, the State must demonstrate in accordance with an elevated standard of proof, namely, by clear and convincing evidence, that the police would have sought a warrant without the tainted knowledge or evidence that they previously had acquired or viewed. Third, regardless of the strength of their proofs under the first and second prongs, [the State] must demonstrate by the same enhanced standard that the initial impermissible search was not the product of flagrant police misconduct.
>
> [Id. at 360-61 (emphasis added).]

The State must establish all three prongs by clear and convincing evidence, and its failure to satisfy any one prong will result in suppression. Id. at 362.

(3)

The attenuation doctrine provides generally that if the seizure of evidence is so attenuated from unconstitutional police conduct that the taint from the unlawful

conduct is sufficiently purged, then the exclusionary rule will not apply. State v. Shaw, 213 N.J. 398, 414 (2012).  In other words, "but-for cause, or 'causation in the logical sense alone,' can be too attenuated to justify exclusion."  Hudson, 547 U.S. at 592 (internal citations omitted) (quoting United States v. Ceccolini, 435 U.S. 268, 274 (1978)).  The State bears the burden of proving attenuation. In Int. of J.A., 233 N.J. 432, 457 (2018) (citing Brown v. Illinois, 422 U.S. 590, 604 (1975)).  To determine whether seized evidence is sufficiently attenuated from police misconduct, we generally look to three factors: "(1) 'the temporal proximity' between the illegal conduct and the challenged evidence; (2) 'the presence of intervening circumstances'; and (3) 'particularly, the purpose and flagrancy of the official misconduct.'"  Shaw, 213 N.J. at 415 (quoting Brown, 422 U.S. at 602-04) (emphasis added).

## B.

Of these three exceptions, the State has not explicitly relied on the independent source doctrine.  And that is not surprising.  It cannot demonstrate by any means—let alone by clear and convincing proof—that the initial impermissible illegal entry into the apartment was not the product of flagrant police misconduct; that is, their unlawful and unreasonable manner of entry into the apartment without any justification whatsoever.

46                                                                A-0580-20

The State argues the exclusionary rule is inapplicable, not because an exception to that rule applies, but rather, because less harsh remedies (wearing body cameras, subjecting police to Section 1983 actions, and the threat of disciplinary proceedings) will deter police from this misconduct. Nevertheless, the State and AG suggest that the illegal entry into the apartment was not the "but-for" cause of obtaining the drugs. In other words, they contend that the seizure of the drugs was too attenuated from the police conduct. This suggestion implicitly implicates the doctrines of inevitable discovery and attenuation.

We emphasize, contrary to the State's contention, that demonstrating probable cause for the issuance of a search warrant containing a knock-and-announce rule does not obviate the obligation to comply with the warrant mandate or application of the exclusionary rule. As we pointed out, an unjustified knock-and-announce violation essentially renders the search and seizure warrantless, see Goodson, 316 N.J. Super. at 305-06, and therefore it is presumed invalid. Even if no such presumption of invalidity existed, the exclusionary rule would still apply. This is especially due to the flagrant police conduct of inexplicably initially ignoring the mandate that they knock and announce, and then the further conduct of not responding to "Babe?" and later saying to Caronna, "How you doing, what's going on?" before they finally indicated they were police and there to search the apartment. In addition to contending that the violation did not cause the seizure of

47

evidence, the State argues that the violation cannot invalidate the search because probable cause existed for the issuance of the warrant.  But in our view, separating the "manner of entry" from the related search slices the admitted violation too finely.

In determining the applicability of the inevitable discovery doctrine to an unjustified entry into a dwelling, our courts have previously considered the flagrancy of the illegal conduct.  The police should not "profit" from a flagrant disregard of the knock-and-announce requirement.  State v. Herrera, 211 N.J. 308, 330 (2012).  For example, in State v. Chaney, 318 N.J. Super. 217, 226-27 (App, Div. 1999), we rejected suppression of evidence because the entry did not "constitute[] such flagrant police misconduct."  In Chaney, there was therefore no need to deter "similar future violations of constitutional rights." Id. at 227.  And by distinguishing Chaney, Judge Edwin H. Stern noted—while rejecting application of the inevitable discovery doctrine—that a warrantless entry into a dwelling was, in part, due to the unjustified forcible method of entry.  See State v. Lashley, 353 N.J. Super. 405, 411-13 (App. Div. 2002).  Accordingly, considering the clear disregard of the police in this case for the court-mandated knock-and-announce requirement, we reject application of the inevitable discovery exception to the exclusionary rule.

Furthermore, the causal connection between the conceded police illegality (unjustifiably ignoring the knock-and-announce requirement in the warrant without justification) and the seizure of the drugs is not attenuated. First, there is no temporal break between the illegal police conduct of violating the knock-and-announce requirement in the warrant and the seizure of the drugs. The police walked up to the front door, opened the unlocked door without knocking or announcing their presence, then seized the drugs immediately after encountering Caronna in bed. That is undisputed.

Second, there are no intervening circumstances whatsoever that break the unconstitutional chain of causation. As we previously pointed out, the manner of entry into a dwelling—such as, like here, entry without knocking and announcing—is an element of the reasonableness that must be and has been a necessary inquiry under the New Jersey Constitution that can render a warrant constitutionally defective. See Goodson, 316 N.J. Super. at 305-06.

Third, the purpose and flagrancy of the official misconduct is uncontested by the parties and is particularly troublesome given our State's constitutionally-enhanced liberty safeguards, and the objectives underlying the exclusionary rule and the knock-and-announce requirement. The rule does more than protect against violence and property damage, although both protections are substantial. It protects the occupant's privacy—a tradition inculcated in Anglo-American law

reflecting "the reverence of the law for the individual's right to privacy in his [or her] house." See Miller, 357 U.S. at 313. Individual privacy interests are not inconsequential.

Thus, utilizing the improperly seized evidence would contravene the exclusionary rule's purposes of (1) deterring clear illegal police conduct and (2) serving as an "indispensable mechanism for vindicating the constitutional right to be free from unreasonable searches." Carter, 247 N.J. at 530 (quoting Novembrino, 105 N.J. at 157 (explaining that admitting the evidence implicitly endorses unconstitutional conduct)); see United States v. Calandra, 414 U.S. 338, 357 (1974) (Brennan, J., dissenting) (explaining that "[t]he exclusionary rule . . . accomplished the twin goals of enabling the judiciary to avoid the taint of partnership in official lawlessness and of assuring the people—all potential victims of unlawful government conduct—that the government would not profit from its lawless behavior"); see also Terry v. Ohio, 392 U.S. 1, 13 (1968) (explaining that "admitting evidence in a criminal trial . . . has the necessary effect of legitimizing the conduct which produced the evidence, while an application of the exclusionary rule withholds constitutional imprimatur").

The integrity of our court system is threatened, in part, by allowing admission of evidence obtained in flagrant violation of the Constitution. See

Herring v. United States, 555 U.S. 135, 152-53 (Ginsburg, J., dissenting) (explaining that "to maintain respect for law [and] to preserve the judicial process from contamination," courts should not provide implicit aid to constitutional violations) (internal quotation mark omitted) (quoting Olmstead v. United States, 277 U.S. 438, 484 (1928) (Brandeis, J., dissenting)).  This is in line with our Court's assertion that judicial integrity is not the sole reason for utilizing the exclusionary rule, but "in particular cases 'judicial integrity' may be threatened by certain kinds of police misconduct and itself would justify application of the [exclusionary] rule."  Novembrino, 105 N.J. at 167 (Handler, J., concurring).  But see Presley, 436 N.J. Super. at 460 (explaining that New Jersey courts will decline to apply the exclusionary rule when it would not advance its purposes of "deterrence, judicial integrity, and imposing a cost on illicit behavior—and would disserve the process of doing justice in this state by preventing the introduction of reliable and relevant evidence in a criminal prosecution.  Use of that evidence in this state will not offend the integrity of our judicial process") (quoting State v. Evers, 175 N.J. 355, 380 (2003)).

To summarize, the method of an officer's entry into a dwelling is an element of the reasonableness inquiry under Article I, Paragraph 7, and the New Jersey Constitution.  It is an important factor to consider when evaluating the

reasonableness of police action, the guarantee against unreasonable searches and seizures, and the applicability of the exclusionary rule. Where there is no justification for violating the warrant requirement mandating that they knock and announce their presence—such as exigent circumstances—the illegal and objectively unreasonable entry renders the search and seizure constitutionally defective. Under the facts of this case, application of the exclusionary rule is required to enforce the broad protections against unreasonable searches and seizures guaranteed by Article I, Paragraph 7.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0580-20