943 A.2d 901 (2008)
399 N.J. Super. 192
STATE of New Jersey, Plaintiff-Respondent,
v.
Hiram RODRIGUEZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 25, 2008.
Decided March 28, 2008.
*903 Yvonne Smith Segars, Public Defender, attorney for appellant (Ruth Bove Carlucci, Assistant Deputy Public Defender, of counsel and on the brief).
Anne Milgram, Attorney General, attorney for respondent (Hillary Horton, Deputy Attorney General, of counsel and on the brief).
Before Judges STERN, C.S. FISHER and C.L. MINIMAN.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we consider whether the police breached the "knock and announce" rule in executing a search warrant. We conclude that the police complied with the "reasonable wait time" standard set forth in United States v. Banks, 540 U.S. 31, 41, 124 S.Ct. 521, 528, 157 L.Ed.2d 343, 355 (2003), when they waited fifteen to twenty seconds after announcing their presence before entering the premises. As a result, we need not resolve the State's argument that Hudson v. Michigan, 547 U.S. 586, 590, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56, 63 (2006), which holds that the Fourth Amendment does not authorize application of the exclusionary rule for a knock and announce violation, should be followed in determining the appropriate remedy for a knock and announce violation of our state constitution.

I
Defendant was charged with a number of drug offenses and eventually pled guilty to third-degree possession of controlled dangerous substances (CDS) with the intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7, for which he was sentenced to a three-year prison term.
Before he pled guilty, defendant unsuccessfully moved for the suppression of evidence. Following the entry of judgment, defendant appealed and presented these arguments for our consideration:
I. THE COURT BELOW ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS BECAUSE THERE WAS NO CREDIBLE EVIDENCE THAT THE POLICE HAD COMPLIED WITH THE KNOCK AND ANNOUNCE REQUIREMENT OF THE SEARCH WARRANT.
II. THE MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED BECAUSE THE POLICE DID NOT WAIT A REASONABLE AMOUNT OF TIME BEFORE THEY ENTERED DEFENDANT'S RESIDENCE. (Not Raised Below).
We reject these arguments and affirm.

II
At the suppression hearing, Officer Lawrence Smith of the Elizabeth Police Department testified that he and other *904 officers executed a search warrant at 8:18 a.m. on August 4, 2004, for CDS and other related materials, and for a person known as "Groove," in a third-floor apartment on Bond Street.
Officer Smith testified that he knocked three times in succession and waited ten or fifteen seconds. Upon receiving no response, Officer Smith knocked three times again, this time yelling "police, search warrant." Again, there was no response, and, after fifteen or twenty seconds, the police entered through this unlocked door. Officer Smith yelled "police" at least three times as he and the others entered.
The door opened into a vacant kitchen. From there the police entered the living room where Jameel Griggs  the man known as "Groove" for whom the police were searching  was sleeping on a couch. Griggs awoke and lifted his head; Officer Smith indicated he had a search warrant for the apartment. Officer Smith then entered a bedroom. There, Lashawanda Williams, defendant, and a small child were in bed. According to Officer Smith, it appeared "they had been sleeping and just woke up." The police searched the apartment and found CDS in the bedroom, near the bed where defendant was awakened when the police entered.

III
The issues before us relate solely to whether the manner of execution met with the warrant requirements and principles contained within the federal and state constitutions.
Defendant argues two things. He first claims that the evidence failed to support the judge's finding that the officers knocked and announced their presence before entering. And second, he claims that, even if the police did announce their presence, they did not wait a "reasonable" period of time between the announcement of their presence and entry. A third issue was raised by the State, which argues that even if there was a violation of the knock and announce rule, the judge correctly denied the motion to suppress because the exclusionary rule does not apply to federal knock and announce violations and, consequently, should not apply to state knock and announce violations.
We find no merit in defendant's two arguments and, therefore, need not determine whether the State is correct  although we doubt that it is  in arguing that the exclusionary rule should not apply to a state knock and announce violation.

A
Defendant's argument that the police never knocked or announced their authority to enter is without merit. This contention requires our application of the familiar standard regarding review of a judge's fact findings. We defer to such findings if they are supported by evidence that the judge, who was in a position to observe the witnesses as they testified, was entitled to credit. State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999). And we will not disturb those findings unless "they are so clearly mistaken `that the interests of justice demand intervention and correction.'" State v. Elders, 192 N.J. 224, 244, 927 A.2d 1250 (2007) (quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964)).
Here, the trial judge credited and relied upon Officer Smith, who testified that he knocked a number of times and announced his presence before entering the apartment. Defendant argues that the judge should not have credited this testimony because he also found that Williams, who testified that no announcement was made, was a credible witness. It is true the judge found that "[t]here *905 was nothing that caused [him] to believe or disbelieve her testimony based upon her mannerisms, demeanor and the way she testified," but the judge also found that in weighing the respective interests of Williams and Officer Smith, he felt compelled to place greater weight on the latter's testimony. This was an assessment that the judge was entitled to make, and his conclusion that Officer Smith was more believable than Williams because she had a substantial motive for testifying in defendant's favor had an adequate basis in the record. Accordingly, in applying our standard of review, we defer to the judge's findings that the police knocked and announced their presence before entering.

B
The judge also relied upon Officer Smith's testimony in ascertaining the manner in which the police announced their presence. Smith testified, as observed earlier, that he knocked three times and waited ten or fifteen seconds. When he did not receive a response, Officer Smith knocked three times again, this time yelling "police, search warrant." He received no response, and, after an additional fifteen or twenty seconds, Officer Smith entered through an unlocked door and, as he entered, yelled "police" at least three more times.
Defendant argues that, even if this version was accurate, it demonstrates the police failed to wait a reasonable time after the announcement of their presence. To put this issue in perspective, we must consider the underpinnings of the Fourth Amendment and N.J. Const. art. I, ¶ 7, and the core values they embrace.
As the Supreme Court observed long ago, the Fourth Amendment's prohibitions apply
to all invasions, on the part of the [g]overnment and its employés of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers that constitutes the essence of the offence; but it is the invasion of his indefeasible right of personal security, personal liberty and private property.
[Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746, 751 (1886).]
Because damage to personal liberty, personal security, and private property is generated simply by an unauthorized entry, it has been recognized that a knock and announce rule was imposed by the Fourth Amendment. The Supreme Court has recognized that this rule has "its origins in our English legal heritage," Hudson, supra, 547 U.S. at 589, 126 S.Ct. at 2162, 165 L.Ed.2d at 63, and may be traced back as far as the Thirteenth Century, Wilson v. Arkansas, 514 U.S. 927, 932 n. 2, 115 S.Ct. 1914, 1917 n. 2, 131 L.Ed.2d 976, 981 n. 2 (1995). Consequently, as observed in Wilson, there was "little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search and seizure." Id. at 934, 115 S.Ct. at 1918, 131 L.Ed.2d at 982. See also State v. Johnson, 168 N.J. 608, 615, 775 A.2d 1273 (2001); State v. Walker, 385 N.J.Super. 388, 399, 897 A.2d 411 (App. Div.), certif. denied, 187 N.J. 83, 899 A.2d 305 (2006); State v. Goodson, 316 N.J.Super. 296, 302, 720 A.2d 381 (App.Div.1998).
Our Supreme Court has outlined the "most worthwhile purposes" of the knock and announce rule as:
(i) "decreasing the potential for violence"; (ii) "protection of privacy"; and (iii) "preventing the physical destruction of property." As to the first of these, it has been cogently noted that an "unannounced *906 breaking and entering into a home could quite easily lead an individual to believe that his safety was in peril and cause him to take defensive measures which he otherwise would not have taken had he known that a warrant had been issued to search his home." As to the second, notice minimizes the chance of entry of the wrong premises by mistake and the consequent subjecting of innocent persons to "the shock, fright or embarrassment attendant upon an unannounced police intrusion." . . . The third purpose is equally valid, for quite obviously a person should ordinarily "be allowed the opportunity to voluntarily admit the officer into his home" instead of suffering damage to his property.
[Johnson, supra, 168 N.J. at 616, 775 A.2d 1273 (quoting Wayne R. LaFave, Search and Seizure § 4.8(a) at 599-600 (4th ed.1984)).]
The knock and announce rule thus protects not only the core constitutional value of privacy but incorporates important safety and property concerns as well.[1]
Although the rule and its purposes are firmly rooted in the federal and state constitutions, its application is not always clear and its breach not always easily ascertained. Because we must accept the trial judge's findings that Officer Smith knocked and announced his presence prior to entry, the discrete issue posed by defendant is whether the fifteen-to-twenty-second period from the officer's announcement until the unwelcomed entry was reasonable. In short, we must examine whether the police complied with what the Supreme Court has referred to as the "reasonable wait time" standard. Banks, supra, 540 U.S. at 41, 124 S.Ct. at 528, 157 L.Ed.2d at 355. The Court has recognized that this standard is "necessarily vague," and turns on the circumstances existing when the police execute the warrant. Hudson, supra, 547 U.S. at 590, 126 S.Ct. at 2163, 165 L.Ed.2d at 63.
Here, the objects of the search were drugs and other evidence related to illegal drug trafficking. As a result, in ascertaining what constitutes a reasonable wait time, "the proper measure was not merely how long it would take the resident to reach the door, but how long it would take to dispose of the suspected drugs." Id. at 590, 126 S.Ct. at 2163, 165 L.Ed.2d at 63 (citing Banks, supra, 540 U.S. at 39-40, 124 S.Ct. at 527, 157 L.Ed.2d at 354-55). In similar circumstances, the Court in Hudson assumed, because the State of Michigan had conceded, that a wait of only "three to five seconds" from knock to entry constituted a violation of the "reasonable wait time" standard. 547 U.S. at 588-91, 126 S.Ct. at 2162-63, 165 L.Ed.2d at 62-63. On the other hand, the Banks Court concluded that a wait of fifteen to twenty seconds, in similar circumstances, was reasonable. The Banks Court cited a number of decisions from the federal courts of appeals that also found reasonable a similar wait time. See United States v. Goodson, 165 F.3d 610, 612, 614 (8th Cir.), cert. denied, 527 U.S. 1030, 119 S.Ct. 2385, 144 L.Ed.2d 787 (1999); United States v. Spikes, 158 F.3d 913, 925-27 (6th Cir.1998), cert. denied, 525 U.S. 1086, 119 S.Ct. 836, 142 L.Ed.2d 692 (1999); United States v. Jones, 133 F.3d 358, 361-62 (5th Cir.), cert. denied, 523 U.S. 1144, 118 S.Ct. 1854, 140 L.Ed.2d 1102 (1998); United *907 States v. Spriggs, 996 F.2d 320, 322-23 (D.C.Cir.), cert. denied, 510 U.S. 938, 114 S.Ct. 359, 126 L.Ed.2d 323 (1993); United States v. Garcia, 983 F.2d 1160, 1168 (1st Cir.1993).
The issue is not gauged purely by a Procrustean approach to the passage of time. Banks, supra, 540 U.S. at 36, 124 S.Ct. at 525, 157 L.Ed.2d at 352. Although the Court described the "proper measure" of the "reasonable wait time" as the time it would take the suspect to dispose of the evidence sought, see Hudson, supra, 547 U.S. at 590, 126 S.Ct. at 2163, 165 L.Ed.2d at 63, we may also validly consider the time it would reasonably take an occupant to answer the door, given that another purpose of the knock and announce rule is to prevent the physical destruction of property, such as the door itself, Johnson, supra, 168 N.J. at 616, 775 A.2d 1273 (citation omitted).[2] Therefore, other circumstances, such as the time of day and the size of the premises should be considered. For example, the expected time for a resident to answer a knock on the door may be longer at a time when it is reasonable to assume that the occupant is sleeping. Here, the police executed the search on a Wednesday, a short time after 8:00 a.m., when the police could reasonably expect that anyone inside would be up and about. It is also reasonable to expect the police to wait a longer period of time before entering when the premises are large as opposed to an apartment or hotel room. In this case, the breach was of a two-bedroom apartment, and, thus, what constitutes a reasonable wait time would be shorter here than a large or multi-story home, although perhaps not as short as what would be reasonable if the premises was a hotel room. See Banks, supra, 540 U.S. at 40, 124 S.Ct. at 527, 157 L.Ed.2d at 354-55.
We are satisfied that the circumstances in the matter at hand are not materially different from those in Banks, practically identical to those found reasonable in Spriggs, supra, 996 F.2d at 322-23, which held as reasonable a fifteen-second wait at an apartment door after giving an audible announcement at 7:45 a.m. on a weekday, and a far cry  relatively speaking  from the unreasonable three-to-five-second wait considered in Hudson. We thus conclude that although close to or at the limit of what constitutes a reasonable wait time in these circumstances, the fifteen-to-twenty-second wait from the announcement  particularly when coupled with the fact that the police knocked without an announcement and waited fifteen to twenty seconds before that  was reasonable.

C
The State has argued that the exclusionary rule should have no application even if there was a knock-and-announce violation. The State relies on Hudson, where the Court held that the exclusionary rule would not apply to knock-and-announce violations because other remedies were available to vindicate and deter such violations. To the extent that defendant's suppression motion was based upon the Fourth Amendment, the State's reading of Hudson is correct. But it does not necessarily follow that our state constitution requires the same result.
*908 It is important to recognize that the Court's holding in Hudson was narrowly decided. Justice Scalia's majority opinion concluded that the exclusionary rule has no application when there is a violation of the knock and announce rule because the victim of the unlawful police action may sue for damages based on 42 U.S.C.A. § 1983, which is now viewed more expansively than in 1961 when the exclusionary rule was adopted,[3]Hudson, supra, at 597-99, 126 S.Ct. at 2167-68, 165 L.Ed.2d at 68-69, and because of what the majority believed to be "the increasing professionalism of police forces, including a new emphasis on internal police discipline" since Mapp was decided, id. at 599, 126 S.Ct. at 2168, 165 L.Ed.2d at 69. Four members of the Court rejected the conclusion that such a breach of the Fourth Amendment may be vindicated and deterred by sanctions less than the exclusion of evidence, asserting that the majority's holding was based solely on "an unvarnished judicial instinct"; the dissenters would have applied the exclusionary rule to the search and seizure there in question. Id. at 630, 126 S.Ct. at 2186, 165 L.Ed.2d at 89 (Breyer, J., dissenting). We also note that Justice Scalia's views were not entirely embraced by a majority of the Court; to fully understand the extent or future application of the majority's holding, consideration must also be given to Justice Kennedy's concurring opinion. Id. at 602-05, 126 S.Ct. at 2170-71, 165 L.Ed.2d at 71-73. Although Justice Kennedy agreed with members of the Court who found "the causal link between a violation of the knock-and-announce requirement and a later search is too attenuated to allow suppression," he also emphasized that a breach of the rule "is a serious matter," and that "[s]ecurity must not be subject to erosion by indifference or contempt." Id. at 603, 126 S.Ct. at 2170, 165 L.Ed.2d at 72.
Although conclusive as to the application of the Fourth Amendment, even if by the barest of margins, Hudson by no means governs the application of our state constitution to a knock and announce violation. In this regard, it is quite noteworthy that our Supreme Court has, on many occasions, viewed the scope of privacy rights protected by Article I, paragraph 7, more expansively than the Supreme Court of the United States has viewed the Fourth Amendment. For instance, the Court has found a reasonable expectation of privacy in telephone numbers called, State v. Hunt, 91 N.J. 338, 450 A.2d 952 (1982); State v. Mollica, 114 N.J. 329, 554 A.2d 1315 (1989); but see Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); a reasonable expectation of privacy in the records maintained by a financial institution, State v. McAllister, 184 N.J. 17, 29, 875 A.2d 866 (2005); but see United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); and a reasonable expectation of privacy in opaque containers left at the curb for collection, State v. Hempele, 120 N.J. 182, 576 A.2d 793 (1990); but see California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). The Court has also recognized a broader concept of what constitutes a seizure, State v. Tucker, 136 N.J. 158, 642 A.2d 401 (1994), than has been found in the Fourth Amendment, California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); has recognized that a warrantless arrest for a motor vehicle offense does not authorize the search of a vehicle's passenger compartment, State v. Pierce, 136 N.J. 184, 642 A.2d 947 (1994), whereas the Fourth Amendment does permit such a search, New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 *909 (1981); and has found that there must be a reasonable and articulable suspicion of criminal wrongdoing as a prerequisite to requesting consent to search a vehicle after a routine stop for a motor vehicle violation, State v. Carty, 170 N.J. 632, 790 A.2d 903 (2002), when the Fourth Amendment does not, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
This broad interpretation of our state constitution extends not only to the privacy rights embraced by N.J. Const. art. I, ¶ 7, but also to the vindication of those rights. For example, contrary to the interpretation given to the Fourth Amendment in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), our Supreme Court has recognized that an accused has automatic standing to seek the suppression of evidence seized in violation of N.J. Const. art. I, para. 7, State v. Johnson, 193 N.J. 528, 940 A.2d 1185 (2008); State v. Alston, 88 N.J. 211, 440 A.2d 1311 (1981). And our state constitution does not include a "good faith" exception as does the Fourth Amendment. Compare State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987) with United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
Consequently, in determining the values embraced by our state constitution, we think the majority opinion in Hudson should not be followed since Justice Breyer's dissenting opinion appears far more in tune with the manner in which our courts have interpreted and applied the similar provisions of the state constitution. We have not been directed to any decisions of our courts that have declined to apply the exclusionary rule to a state law claim once a search and seizure violation has been ascertained. Indeed, our holding in Goodson indicates that the exclusionary rule would be applied to an unconstitutional entry into an individual's premises in similar circumstances. 316 N.J.Super. at 305-06, 720 A.2d 381. Although decided before Hudson, we have not been presented with a persuasive argument as to why our approach in Goodson should not apply to future knock and announce violations.
However, we need not resolve this question. Here, the police waited a reasonable time before forcibly entering defendant's residence. Because the police did not violate the knock and announce rule, it is not necessary to our disposition of this appeal to determine whether the state constitution would require exclusion of the evidence obtained as a result of the search and seizure if there had been a violation of the knock and announce rule. Donadio v. Cunningham, 58 N.J. 309, 325-26, 277 A.2d 375 (1971); A.A. v. State, 384 N.J.Super. 481, 500-01, 895 A.2d 453 (App.Div.), certif. denied, 188 N.J. 346, 907 A.2d 1007 (2006), cert. denied, ___ U.S. ___, 127 S.Ct. 1169, 166 L.Ed.2d 996 (2007).
Affirmed.
STERN, P.J.A.D. (concurring).
The State "urges [us] to clearly state that the exclusionary rule is not an available remedy for an alleged violation of the knock-and-announce rule," and would not apply to this case even if there was a violation. This is because "[t]he United States Supreme Court has recently ruled that the exclusionary rule does not apply to knock-and-announce violations." See Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 2168, 165 L.Ed.2d 56, 69 (2006).
I have previously pointed out that Article I, paragraph 7, of the New Jersey Constitution was adopted "to provide Fourth Amendment protections because the latter was not then applicable to the States" when the New Jersey Constitution was adopted in 1947, Joye v. Hunterdon *910 Central Bd. of Ed., 353 N.J.Super. 600, 611, 803 A.2d 706 (App.Div.2002), aff'd, 176 N.J. 568, 826 A.2d 624 (2003), but the Supreme Court has developed standards for determining when greater protection is warranted under the state constitution as compared with the similarly worded Fourth Amendment. See, e.g., Joye, supra, 176 N.J. at 607-08, 826 A.2d 624; id. at 635-36, 826 A.2d 624 (LaVecchia, J., dissenting); State v. Williams, 93 N.J. 39, 57-58, 459 A.2d 641 (1983) (referring to State v. Hunt, 91 N.J. 338, 358-68, 450 A.2d 952 (1982) (Handler, J., concurring)). Given the history of Article I, paragraph 7, we should not provide greater protection thereunder without specific reasons consistent with the Supreme Court's criteria and standards.
I also believe that law enforcement officers in the field are entitled to notice, as soon as practical, regarding circumstances in which we will require them to act differently than they have been taught to conduct themselves under the Fourth Amendment. Therefore, we should generally consider when our constitution provides greater protection than the Fourth Amendment as soon as practical.
Here, we say "we think the majority opinion in Hudson should not be followed" in New Jersey for cogent reasons,[1] but then say "we need not resolve this question" because there was no constitutional violation and there is no need to consider whether any greater protection would be warranted by application of the exclusionary rule under the state constitution. I would prefer to say nothing other than we need not decide the issue because it is not necessary to do so in this case. When it comes to remedy, the reasonableness of the police conduct is not the issue; a violation of the constitution must already have been found. Hence, the behavior of law enforcement officers in the field will not be impacted by the ultimate decision regarding application of the exclusionary rule to violations of the "knock-and-announce" rule, and we need not address the issue in this case.
NOTES
[1] We are mindful that there are instances in which a "no knock" warrant may be authorized and executed without announcement. See State v. Jones, 179 N.J. 377, 846 A.2d 569 (2004); State v. Sanchez, 179 N.J. 409, 846 A.2d 588 (2004). However, the warrant here required that the police knock and announce, and the State has not argued that the police were authorized to enter without announcing their presence.
[2] Although suggesting the irrelevance of the time it would take an occupant to answer the door in determining what constitutes a reasonable wait time, the Banks Court dealt with the situation where the police had reason to believe that the circumstances were exigent. 540 U.S. at 40, 124 S.Ct. at 527, 157 L.Ed.2d at 354. Here, while the nature of the evidence sought is similar, the State has not argued that exigent circumstances compelled an expeditious entry.
[3] Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
[1] Our Supreme Court has not limited the exclusionary rule of the state constitution to warrantless searches. State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987) (no "good faith" exception to the warrant requirement).