NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3379-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TYSHON M. NIEVES, a/k/a
TYSHON NIEVES,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

August 9, 2023

APPELLATE DIVISION

Argued May 3, 2023 – Decided August 9, 2023

Before Judges Accurso, Vernoia and Natali.[1]

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 21-09-1334.

Margaret Ruth McLane, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Margaret Ruth McLane, of counsel and on the brief).

Boris Moczula, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Boris Moczula, of counsel and on the brief).

---

[1]  Judge Natali did not participate in oral argument but joins in the opinion with the consent of counsel.  R. 2:13-2(b).

The opinion of the court was delivered by

VERNOIA, J.A.D.

In this matter we determine whether law enforcement officers executing a knock-and-announce search warrant on a residence in the early morning hours violated defendant Tyshon M. Nieves's constitutional rights by failing to wait a reasonable time after knocking and announcing their presence to forcibly enter the residence. We also consider whether a violation of the constitutional requirement that officers executing a knock-and-announce search warrant wait a reasonable time after knocking and announcing their presence requires exclusion of the evidence seized during the subsequent search. Based on our review of the record, we determine the law enforcement officers did not wait a reasonable time after knocking and announcing their presence to forcibly enter the residence, and, as a result, the evidence seized during the subsequent search should have been suppressed.

I.

Police arrested defendant following the execution of a knock-and-announce search warrant and seizure of heroin and a handgun at an Atlantic City home in which he occasionally stayed with his girlfriend, her child, her

two juvenile brothers, and her mother.[2]  A grand jury returned an indictment charging defendant with third-degree possession of heroin, third-degree distribution of heroin, second-degree distribution of heroin within 500 feet of the Atlantic City boardwalk, and second-degree possession of a firearm by a certain person prohibited from possessing weapons.

Defendant filed a motion to suppress the evidence seized from the residence, arguing the police did not wait a reasonable time prior to forcibly entering the premises after knocking and announcing their presence.  The trial court denied the suppression motion, and defendant later pleaded guilty to the possessory weapons offense in exchange for the State's recommendation of a five-year sentence with a five-year period of parole ineligibility and dismissal of the remaining charges.  Following the court's imposition of the recommended sentence, defendant filed this appeal challenging the court's denial of the suppression motion.

The New Jersey Division of Criminal Justice and the New Jersey State Police obtained a warrant to search the Atlantic City residence, which the warrant affidavit described as a "two story duplex" with a front and rear door and a detached garage with a side door and a "garage door . . . ."  The warrant

---

[2]  During the search, police also seized marijuana, a magazine with bullets, shell casings, and a hollow point bullet.  The indictment against defendant does not include any charges related to those items.

authorized execution of the search warrant "between the hours of 5:00 a.m. and 11:59 p.m. by first knocking and announcing [the officers'] presence" and the seizure of items concerning controlled-dangerous-substance-related offenses.

At the hearing on defendant's motion to suppress the seized evidence, New Jersey State Police Sergeant Bernard Tennant testified he was not involved in the investigation that resulted in the application for, and issuance of, the search warrant. Instead, Sergeant Tennant led a team of fifteen officers who were assigned to execute the search warrant. Sergeant Tennant understood the warrant required the officers first knock-and-announce before entering the home, and he explained he did so by knocking loudly on the home's front door and stating, "State Police, search warrant. State Police, search warrant."

Sergeant Tennant further explained the officers gained entry to the home by using a breaching element — a battering ram — to "knock-in" the home's front door. The fifteen officers entered the home after the door was breached.

Sergeant Tennant did not know "how long a period of time" elapsed from when he first knocked and announced the officers' presence to the breach of the door with the battering ram. Sergeant Tennant explained he does not "think of time" while "out there." Sergeant Tennant acknowledged there is a "legal requirement" that officers "need to wait a period of time before [they]

knock, announce, and then breach the door[.]" He also said he had "no idea how long" after he first knocked and announced the officers' presence that they breached the front door with the battering ram.

Sergeant Tennant was "one of the last" officers to enter the home after the door was breached. As a result, he did not have "any idea" who was in the home or what their circumstances were at the time of the officers' entry. He testified there were "people" in the residence, but he did not recall their ages or how many there were.

Defendant called Lavida Jones as a witness at the suppression hearing.[3] Lavida Jones testified she rented the residence police searched and resided there with her fourteen-year-old and seven-year-old sons, her two-year-old granddaughter, and her daughter, Kanaya Jones. Lavida Jones explained defendant is Kanaya Jones's boyfriend. Lavida Jones testified defendant did not reside at the home but would "come[] over sometimes," and he was present at her home when the police executed the search warrant.

Lavida Jones testified the officers executed the search warrant "[a]t about five in the morning . . . ." At that time, she was asleep with her seven-year-old son on a sectional couch located about two feet from the front door.

---

[3] In its written decision on defendant's motion, the trial court refers to Lavida Jones as Lavedia Jones. We use the former name because it is the name employed to identify the witness in the transcript of the motion hearing.

She first heard a "bang[,]" then heard the officers "announce[,]" and, "by the time she jumped up and got to the door[,]" the door was "already off the hinges." Lavida Jones explained she did not have pants on, and the officers who entered would not let her put clothes on. When asked how much time passed between her hearing the officers' first announcement and their forcible entry into her home, Lavida Jones stated only that "it wasn't even five minutes . . . ."

Lavida Jones identified a video and audio recording she obtained from a security camera from an adjacent home owned by her landlord. She testified the recording shows the officers knocking and announcing themselves until they knocked her "door down." The recording was admitted in evidence at the suppression hearing.

Kanaya Jones also testified. She explained defendant is her boyfriend and she and defendant shared a bedroom at the rear of the home's second floor when the officers executed the search warrant. She heard a bang at about 5:00 a.m. and then next heard officers rushing into the home and up the stairs. She testified the officers then broke through her locked bedroom door. The officers immediately took defendant from her bed, removed him from the room, and told her to put pants on before also removing her from the room. Kanaya Jones testified that from her bedroom's location at the rear of the

6

home's second floor, she could "[p]robably not" hear anyone speaking from outside the front door.

The court issued a written decision on defendant's motion. The court noted defendant's argument the search was unlawful because the officers waited only six seconds after first knocking and announcing their presence before forcibly entering the home. Defendant claimed the purported six seconds the officers waited to enter the home following the first knock-and-announce was an unreasonably short period of time and therefore the ensuing search was unlawful.

The court explained the State argued entry into the home was lawful because Sergeant Tennant knocked and announced the officers' presence three separate times prior to the entry. The court also determined the evidence rendered it "unclear" whether the entry occurred within six seconds of the first knock-and-announce as defendant claimed. The court also noted the State's argument that even if the officers did not wait a reasonable time to enter the home following the first knock-and-announce, suppression of the evidence was not the appropriate remedy.

The court made credibility determinations, finding the three witnesses — Sergeant Tennant, Lavida Jones, and Kanaya Jones — "testified concisely and

believably."  The court further explained it reviewed the video recording and determined it showed the following:

> [T]he executing officers knock[ed] six bangs on the front door.  The officer then shout[ed], "State Police! Search Warrant."  The officer then immediately follow[ed] up with knocking on the door with five more bangs, and again repeat[ed], "State Police! Search Warrant!"  The officer then knock[ed] on the door with four more bangs.  Finally, the officer announc[ed] a third time, "State Police!  Search Warrant!"  At that point, what sound[ed] like a K-9 dog can be heard barking and the video footage ends.

Based on its review of the recording, the court determined it could not "ascertain . . . the exact time between the initial knocking and announcing of the police's presence and their entry into the home."  The court noted defendant claimed the time between the first knock-and-announce and entry into the home was six seconds.  Based on its review of the recording, however, the court found only that there "appears to be eight seconds from the first knock until the video abruptly ends."  According to the court, "[w]hat is clear from the footage, however, is that the [officers] effectuated several rounds of knocks and several rounds of announcing, 'State Police!  Search Warrant!' at a high volume."

The court also explained "[t]he Fourth Amendment requires that the police must knock and announce on the door of the premises to be searched before using force to enter the location," and that, "[u]nder New Jersey as well

as federal law, the knock-and-announce law serves three purposes:  to reduce the risk of violence to police and bystanders, to protect privacy by reducing the risk of entering the wrong premises, and to prevent property damages."

The court noted that determining whether the police waited a reasonable amount of time before entering the premises by force requires consideration of "common factors[,]" including the suspect's criminal history, whether weapons were believed to be present, "the risk to officers' lives and safety," the property size, the presence of other people on the property, and the time of day the search was executed.  Quoting Hudson v. Michigan, 547 U.S. 586, 590 (2006), the court further observed that, "in narcotics cases, reasonableness in delay is not a function of merely 'how long it would take the resident to reach the door, but how long it would take to dispose of the suspected drugs.'"

The court explained it "examin[ed] the conduct of the officers in light of" what it determined was "the ambiguous record regarding the time that elapsed" and concluded "[t]he conduct of the officers in the execution of the . . . warrant did not rise to a level of being a flagrant disregard for the knock-and-announce requirement."  The court accordingly held "it cannot find" that the entry "was in fact unreasonable."  Although it found it could not determine the amount of time that elapsed from the first knock-and-announce to the officers' forcible entry into the home, the court concluded it is "clear that

A-3379-21

there were several knocks, announcements, and testimony from occupants as to the entry being less than 'five minutes.'"

The court also found: police executed the warrant "within the bounds of the time frame" authorized by the search warrant itself, which "adds to the reasonableness of the knock-and-announce warrant's execution"; "[t]his was a narcotics operation, and it is well-known that there is an increased possibility of destruction of evidence in such cases"; defendant's "criminal history includes . . . a conviction for failure to turn over [controlled dangerous substances] in 2013 and resisting arrest in 2014," raising questions as to his "ability . . . to abide by the law and the criminal justice system"; and the property was a duplex "on the smaller side, with the couch within two feet of the door."[4]  The court relied on those findings as further support for its conclusion the officers acted reasonably in their execution of the warrant.

---

[4] Although unnecessary to its disposition of the suppression motion, the court further determined that, even if the officers acted unreasonably in their execution of the search warrant, suppression of the evidence was not warranted under the exclusionary rule.  In support of its decision, the court cited Hudson for the proposition that "the exclusionary rule is not the appropriate remedy for a violation of the knock-and-announce requirement."  We note only that in State v. Caronna, we rejected Hudson's application under the New Jersey Constitution and determined a violation of a search warrant's knock-and-announce requirement during a residential search requires the suppression of evidence under our State constitutional prohibition against unreasonable searches and seizures.  469 N.J. Super. 462, 494-96 (App. Div. 2021).

The court entered an order denying defendant's suppression motion. As noted, defendant later pleaded guilty to the possessory weapons charge and was sentenced. This appeal, which is limited to a challenge to the court's order denying the suppression motion, followed.

Defendant presents the following argument for our consideration:

> POINT I
>
> THE UNREASONABLE EXECUTION OF THE SEARCH WARRANT REQUIRES SUPPRESSION OF THE EVIDENCE FOUND IN THE HOME.

## II.

Our review of a trial court's decision on a motion to suppress is limited. State v. Erazo, ___ N.J. ___, ___ (2023) (slip op. at 12); State v. Ahmad, 246 N.J. 592, 609 (2021). We "must uphold the factual findings underlying the trial court's decision" on a motion to suppress "as long as those findings are supported by sufficient credible evidence in the record." Ahmad, 246 N.J. at 609 (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Deference is given "to those findings in recognition of the trial court's 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (quoting Elders, 192 N.J. at 244). "A reviewing court 'ordinarily will not disturb the court's factual findings unless they are "so clearly mistaken that the interests of justice demand intervention and

A-3379-21

correction."'" State v. Gray, 474 N.J. Super. 216, 222 (App. Div. 2022) (quoting State v. Goldsmith, 251 N.J. 384, 398 (2022)). "A trial court's legal conclusions, however, and its view of 'the consequences that flow from established facts' are reviewed de novo." Goldsmith, 251 N.J. at 398 (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

Our deference to a trial court's findings of fact is not limited only to those based on live testimony presented at an evidentiary hearing. We also defer to a court's fact finding based on its review of video and documentary evidence because of the court's "expertise in fulfilling the role of factfinder." State v. S.S., 229 N.J. 360, 379-80 (2017). We will not reject a trial court's findings of fact merely because we "disagree[] with the inferences drawn and the evidence accepted by the trial court or because [we] would have reached a different conclusion." Id. at 374.

Defendant argues the court erred by denying his suppression motion because only six seconds elapsed between Sergeant Tennant's first knock-and-announce and the officers' forcible entry into the home. He claims that under the circumstances presented, six seconds did not constitute a reasonable amount of time following the first knock-and-announce, and, for that reason, the search following the forcible entry was unlawful.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164-65 (2023) (quoting State v. Nyema, 249 N.J. 509, 527 (2022)). "Within the framework of the [Fourth Amendment], the United States Supreme Court has determined 'that the reasonableness of a search of a dwelling may depend in part on whether law enforcement officers announce . . . their presence and authority before entering.'" State v. Johnson, 168 N.J. 608, 616 (2001) (quoting Wilson v. Arkansas, 514 U.S. 927, 931 (1995)).

"The rationale undergirding the knock-and-announce rule is compelling." Caronna, 469 N.J. Super. at 488. The rule serves the "worthwhile purposes[,]" Johnson, 168 N.J. at 616, of "decreasing the potential for violence[,]" protecting the privacy of the individuals within the residence, and "preventing the physical destruction of property[,]" ibid. (quoting 2 Wayne R. LaFave, Search and Seizure § 4.8(a) at 599-600 (4th ed. 1984)).

Our Supreme Court has explained "[t]he knock-and-announce rule renders unlawful a forcible entry to arrest or search 'where the officer failed first to state his authority and purpose for demanding admission.'" State v. Robinson, 200 N.J. 1, 13-14 (2009) (quoting Miller v. United States, 357 U.S. 301, 308 (1958)). "A necessary corollary of the knock-and-announce rule is

that when 'the police announce . . . their presence and [are] greeted with silence . . . a reasonable time must elapse between the announcement and the officer's forced entry.'" Id. at 16 (alteration in original) (quoting Johnson, 168 N.J. at 621). Officers that fail to wait a reasonable time before forcibly entering a residence following an appropriate knock-and-announce violate the reasonableness requirements of the Fourth Amendment, as applied to the States through the Fourteenth Amendment to the United States Constitution, Hudson, 547 U.S. at 589; Wilson, 514 U.S. at 931-36, and Article 1, Paragraph 7 of the New Jersey Constitution, Robinson, 200 N.J. at 16; Johnson, 168 N.J. at 616.

The "'reasonable wait time' standard" is "necessarily vague" and requires consideration of the circumstances existing when the police execute the warrant. Hudson, 547 U.S. at 590; State v. Rodriguez, 399 N.J. Super. 192, 200 (App. Div. 2008). The United States Supreme Court has "described the 'proper measure' of the 'reasonable wait time' as the time it would take the suspect to dispose of the evidence sought[.]" Id. at 201 (quoting Hudson, 547 U.S. at 590). A court "may also validly consider the time it would reasonably take an occupant to answer the door, given that another purpose of the knock-and-announce rule is to prevent the physical destruction of property, such as the door itself[.]" Ibid. (citing Johnson, 168 N.J. at 616).

14

"[W]hen the knock-and-announce rule does apply, it is not easy to determine what officers must do." Robinson, 200 N.J. at 16 (quoting Hudson, 547 U.S. at 590). The inquiry necessarily requires a determination of "[h]ow many seconds' wait are too few?" Ibid. (quoting Hudson, 547 U.S. at 590). "[T]he time lapse [preceding forced entry need not be] extensive in length, depending on the circumstances of a given case." Ibid. (second alteration in original) (quoting Johnson, 168 N.J. at 621-22). The "facts known to the police are what count in judging reasonable waiting time[,]" ibid. (quoting United States v. Banks, 540 U.S. 31, 39 (2003)), and "the crucial fact in examining [law enforcement's] actions is not the time" it may take a resident "to reach the door but the particular exigency claimed[,]" id. at 17 (quoting Banks, 540 U.S. at 40).

Where, as here, the search warrant is founded on evidence showing the defendant is involved in the distribution of narcotics, "reasonableness in delay is not a function of merely 'how long it would take the resident to reach the door, but how long it would take to dispose of the suspected drugs[.]'" Ibid. (alteration in original) (quoting Hudson, 547 U.S. at 590). As the Court explained in Johnson, "[i]n respect of the destructibility of heroin and cocaine, we take judicial notice of the fact that small quantities of narcotics sold out of

15

a person's home are almost always susceptible to destruction or disposal." 168 N.J. at 620.

Where a search is executed pursuant to a warrant, the "warrant is presumed to be valid and . . . [the] defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (emphasis added) (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). That is, defendant bore the burden of establishing the officers' execution of the search warrant at the residence was unreasonable. Ibid.

In its decision on defendant's suppression motion, the court effectively determined defendant did not sustain his burden because he failed to establish the length of time the officers waited to forcibly breach the front door after first knocking and announcing their presence. As noted, the court found the "ambiguous" recording did not allow a determination of the officers' waiting time because although it showed the officers knocking and announcing at the front door, it abruptly ended seconds later. Of course, a lack of evidence establishing the time the officers waited — beyond Lavida Jones's vague testimony the officers waited less than five minutes — might support a finding

16

defendant did not carry the burden of establishing execution of the search warrant was unreasonable. Jones, 179 N.J. at 388.

Although we generally defer to a court's fact findings based on its review of a recording, S.S., 229 N.J. at 379, we are required to do so only where "more than one reasonable inference can be drawn from the review of a video recording," id. at 380. Where a recording does not support more than one reasonable inference, and a trial court's "factual findings" based on its interpretation of a recording "are so clearly mistaken — so wide of the mark — that the interests of justice demand intervention[,]" a reviewing court owes no deference to a trial court's fact findings drawn from the recording. Id. at 381. Measured against that standard, our intervention is warranted here.

There is nothing ambiguous about the recording. Contrary to the trial court's finding, the recording's abrupt end does not obscure what clearly precedes it. The recording shows a number of individuals — the officers — appearing as shadowlike figures in the early morning light and approaching the porch of the residence. Once on the porch, the officers quickly and repeatedly knock and announce their presence in three rapid and uninterrupted sequences, during the last of which an object is hoisted above the waist level of the officers on the porch and thrust forward toward the residence. In that instant, a

17

loud bang is heard, the door to the residence opens, and light from the interior illuminates the porch as the officers first enter the home.

Although the recording then abruptly ends, it nonetheless captures the events essential to a determination of defendant's challenge to the validity of the execution of the search warrant. Contrary to the trial court's finding, the recording allows for a precise calculation of the officers' waiting time and, concomitantly, whether the time was reasonable based on the circumstances presented.

Defendant argued before the trial court, and argues on appeal, the officers waited six seconds to forcibly enter the premises after knocking and announcing their presence. Our review of the recording causes us to conclude the officers waited even less time than that. It appears defendant measured the time from the moment the officers first knocked on the door to the moment the door was forced open by the battering ram described by Sergeant Tennant during his testimony. In our view, defendant's measure of the time is incorrect because it fails to account for the requirement that officers wait a reasonable time "between the announcement and [their] forced entry." Robinson, 200 N.J. at 16 (quoting Johnson, 168 N.J. at 621). As such, the officers' wait time must be measured from the completion of the first knock-and-announce to the

18

moment the officers forcibly breached the door with the battering ram.[5]  Based on our review of the recording, the elapsed time between those two events is less than five seconds.

Since there is not more than one reasonable inference that can be drawn from the recording, S.S., 229 N.J. at 380, the court's conclusion the recording presented "ambiguity" regarding the time the officers waited to forcibly breach the front door after first knocking-and-announcing is unsupported by substantial credible evidence because it was not reached "by drawing permissible inferences" from the recording, ibid.  The critical point is the recording does not "abruptly end" until after it shows the officers breaking down the door.  We owe no deference to a court's fact findings that "are not supported by sufficient credible evidence in the record."  Id. at 381.  We therefore do not defer to the trial court's finding the waiting time before entry as captured by the recording could not be determined based on the evidence presented.  Ibid.

---

[5] The court's finding the officers made three separate knocks-and-announces is technically accurate, but they followed each other in such rapid succession it might be argued they should be considered as a single knock-and-announce.  If that argument was made and accepted, the officers did not pause and wait at all as required, Robinson, 200 N.J. at 13-14, because simultaneous with the end of the last of the three, the officers breached the front door with the battering ram.  The issue is not raised or argued by the parties, and, despite our observations concerning it, we offer no opinion on its merit.

19                                                                    A-3379-21

A determination whether officers waited a reasonable time to forcibly enter a residence to execute a knock-and-announce warrant "is not gauged purely by a Procrustean approach to the passage of time." Rodriguez, 399 N.J. Super. at 201. But since officers are constitutionally required to wait a reasonable time prior to forcibly entering a residence during the execution of a knock-and-announce warrant, the amount of time the officers wait is an essential element of the analysis. See Hudson, 547 U.S. at 589; Wilson, 514 U.S. at 931-36; Robinson, 200 N.J. at 16; Rodriguez, 399 N.J. Super. at 200-02. Thus, the court's erroneous determination it could not properly determine the time the officers waited prior to forcibly knocking in the front door to the residence mandates a rejection of the court's analysis and legal conclusion the seized evidence should not be suppressed. It further warrants our review of the validity of the search based on the record presented.

We opt to exercise our original jurisdiction to decide the search's reasonableness as we are permitted to do "as is necessary to the complete determination of any matter on review." R. 2:10-5. An exercise of original jurisdiction is warranted "to avoid unnecessary further litigation" and because "the record is adequate to terminate the dispute and no further fact[ ]finding" is required and "a remand would be pointless because the issue to be decided is one of law and implicates a public interest." Vas v. Roberts, 418 N.J. Super.

20

509, 523-24 (App. Div. 2011). Our exercise of original jurisdiction is warranted "as a way to achieve the judicial system's goals of efficiency, finality, and fairness." Price v. Himeji, LLC, 214 N.J. 263, 283 (2013).

"[I]n evaluating the constitutionality of police conduct in executing a warrant, 'the basic test under . . . Article I, Paragraph 7, of the New Jersey Constitution is . . . was the [police] conduct objectively reasonable in light of "the facts known to the law enforcement officer at the time of the search."'" Caronna, 469 N.J. Super. at 495 (alteration in original) (quoting State v. Handy, 206 N.J. 39, 46-47 (2011)). A determination of whether officers waited the requisite reasonable time to forcibly enter a residence after knocking and announcing their presence "turns on the circumstances existing when the police execute the warrant." Rodriguez, 399 N.J. Super. at 200; see also Banks, 540 U.S. at 39. In making the determination, we must consider whether the officers' conduct was "objectively reasonable in light of 'the facts known to the . . . officer[s] at the time of the search.'" State v. Rockford, 213 N.J. 424, 441 (2013) (quoting Handy, 206 N.J. at 46-47).

Generally, "[t]here are common factors to be applied in determining the reasonableness of the delay between knocking and announcing and a forcible entry." Robinson, 200 N.J. at 17. Those factors include: the defendant's "violent criminal history"; "an informant's tip that weapons will be present";

21                                                          A-3379-21

any "risks to [the] officers' lives and safety"; "the size [and] layout of" the property; "whether persons other than defendant reside there"; "whether others involved in the crimes are expected to be present"; and "the time of day" of the search. Ibid. (citations omitted).

Here, there is no evidence defendant had a violent criminal history supporting a finding it was reasonable for the officers to have waited a shorter, as opposed to a longer, period of time before forcibly entering the premises. See Jones, 179 N.J. at 399-400 (explaining a defendant's prior history for violent crimes may support a no-knock search warrant). The search warrant did not disclose defendant had any prior violent crime history. The affidavit also did not include any information, from either a confidential informant or otherwise, suggesting defendant might possess weapons or that defendant posed any risk to the officers' lives and safety. See id. at 406-07 (describing evidence, including records of a defendant's prior arrests and convictions for violent crimes, supporting a finding the defendant has a "violent nature" and poses a risk to officer safety supporting issuance of a no-knock warrant).

In its denial of the suppression motion, the court relied on defendant's prior conviction for a disorderly persons offense for failing to turn over a controlled dangerous substance in violation of N.J.S.A. 2C:35-10(c) in part to support its finding the officers waited a reasonable amount of time prior to

forcibly entering the residence. The elements of the offense, however, do not include any defiance of authority, refusal to comply with an officer's order, the destruction of any evidence, or violence supporting a finding that officers executing a search warrant need be concerned about a threat to their safety or the destruction of evidence. An offense under N.J.S.A. 2C:35-10 is committed by any individual possessing a controlled dangerous substance who does not "voluntarily deliver the substance to the nearest law enforcement officer." We do not minimize the offense. We find only it is not of such a nature that it objectively created any urgency for the officers in forcibly entering the residence either to protect the officers' safety or to prevent destruction of evidence.

The court correctly cited defendant's prior conviction for resisting arrest, N.J.S.A. 2C:29-2, as a basis supporting a heightened concern defendant might take action to resist the officers once they entered the residence. However, the search warrant affidavit did not indicate whether defendant was convicted of fourth-degree resisting by flight, N.J.S.A. 2C:29-2(a)(2), or third-degree resisting arrest by either using or threatening the use of physical force or violence or by "any other means to create a substantial risk of causing physical injury to the public servant or another," N.J.S.A. 29:2-2(a)(3)(a) and (b). Thus, that the search warrant affidavit showed defendant had a conviction for

23

"resisting arrest" did not establish an objective basis for the officers to conclude defendant posed a risk of violence during execution of the warrant.

The trial court generally referred to the nature of the residence — identifying it as a duplex — but the court did not consider its size in its determination of the reasonableness of the officers' wait time. The testimony of the witnesses — which the court found credible — established the duplex was two stories and large enough that, from her bedroom on the second floor, Kanaya Jones could not hear the officers announce their presence and instead she first heard a "bang" and then the officers running up the stairs.

The reasonable wait time prior to a forcible entry during the execution of a search warrant is in part determined by the time it might take an occupant of a residence to get to the door. See Robinson, 200 N.J. at 17 (explaining a court considering the reasonableness of the requisite wait time following the initial knock-and-announce and forced entry must consider the time of day the warrant was executed); see also United States v. Granville, 222 F.3d 1214, 1218 (9th Cir. 2000) (finding unreasonable an early morning forced entry execution of a search warrant five seconds after knocking and announcing because the occupants were likely asleep and did not have sufficient time to deny the officers' entry). In Banks, the United States Supreme Court observed the time it might take an occupant to get to the door is dependent in part on the

24

size of the property. 540 U.S. at 40. The Court explained the time it would take an occupant to get to the door "will vary with the size of the establishment, perhaps five seconds to open the motel room door, or several minutes to move through a townhouse." Ibid.

Here, the officers did not wait minutes for the occupants to move through Lavida Jones's duplex. Instead, they broke down the door of Lavida Jones's two-story residence less than five seconds after they first knocked and announced. Even though she slept on a couch only a few feet from the front door, she did not have sufficient time to get to that door prior to the officers' forced entry into her home. In our view, the size of Lavida Jones's residence, which was generally known to the officers, therefore weighs against a finding the less-than-five seconds the officers waited is reasonable. See Rodriguez, 399 N.J. Super. at 201-02 ("It is also reasonable to expect police to wait a longer period of time before entering when the premises are large as opposed to an apartment or hotel room.").

Also weighing against a finding the officers' wait time was reasonable is the time of day — 5:00 a.m. — they executed the warrant. "[T]he expected time for a resident to answer a knock at the door may be longer at a time when it is reasonable to assume that the occupant is sleeping." Id. at 201; cf. Banks, 540 U.S. at 40 (noting a "significant circumstance[]" in finding a fifteen-to-

25

twenty-second wait time was reasonable was that police executed the search warrant upon arriving "during the day, when anyone inside would probably have been up and around[.]").  It may be reasonably inferred the officers executed the warrant at 5:00 a.m. in part because they understood the occupants would likely be asleep.  Thus, the officers knew it would take the occupants longer to take any action — either to walk to the door or destroy evidence — than if the warrant was executed when the occupants were awake, yet the officers waited less than five seconds to forcibly breach the front door.

The officers had reason to believe "persons other than defendant reside[d]" at the residence, but they had no information "others involved in the crime [we]re expected to be present[.]"  Robinson, 200 N.J. at 17.  The search warrant affidavit showed defendant did not list the residence as his home address in his filings with the New Jersey Motor Vehicle Commission.  The officers therefore had reason to know:  the residence was not defendant's home; he lived elsewhere; and others inhabited the residence to be searched.  Indeed, although the search warrant affidavit states defendant has "used and continues to use the residence . . . to commit the specified crimes, and that evidence of the specified crimes will be recovered upon the said premises[,]" and the police had "probable cause to believe the [residence] is used to store, distribute, and stockpile . . . drugs, along with evidence of distribution[,]" the

26

search warrant affidavit does not include any facts supporting a finding defendant would be physically present at the residence at the time of the search or that any other person residing in the home may be involved in his alleged criminal activity. Those facts weigh in favor of the officers waiting a longer period, rather than a shorter one, before forcibly entering the residence. See id. at 17-18.

In denying defendant's motion, the court also relied on the notion that because the search warrant affidavit showed defendant was involved in the distribution of illegal narcotics, it was reasonable for the officers to move more quickly to enter the residence to prevent the destruction of evidence. Johnson, 168 N.J. at 620; Rodriguez, 399 N.J. Super. at 201. The court did not, however, consider that the search warrant affidavit did not identify the quantity of drugs allegedly distributed by defendant and therefore offered no objective basis for the officers to determine or conclude defendant possessed a small quantity of controlled dangerous substances that might be amenable to quick disposal or destruction if he was awakened at 5:00 a.m. See Johnson, 168 N.J. at 620. Moreover, there is no other information in the search warrant affidavit establishing defendant presented a particularized risk of destroying evidence. See id. at 620-21 (explaining a no-knock warrant is not supported

by a mere claim an individual could destroy evidence during a search executed pursuant to a warrant).

In sum, we are convinced any reasoned analysis of the pertinent factors requires a finding the officers did not wait a reasonable amount of time — less than five seconds — before forcibly entering the premises. To the extent the reasonableness of the wait time is measured against whether the occupants of the residence had time to get to the door or to destroy evidence, Robinson, 200 N.J. at 13-14, the recording provides vivid and compelling evidence none of the occupants had the opportunity to do either during the less-than-five seconds the officers waited before knocking in the front door at 5:00 a.m. The knock-and-announce and forcible breach of the door shown in the recording occurred so quickly and with such fluidity that the occupants of the house were effectively denied the requisite pause and reasonable wait period to which they are constitutionally entitled prior to the officers' forcible entry.

We do not find there could never be circumstances under which a waiting time of five seconds or less may be reasonable. We determine only that because the pertinent factors weigh strongly against the abbreviated wait-time here, and the State offers no objective facts known to the officers demonstrating any urgency presented by the execution of the warrant, the less-than-five-second period the officers waited here constitutes an unreasonable,

and unconstitutional, execution of a knock-and-announce warrant. See, e.g., Granville, 222 F.3d at 1218 (finding early morning forced entry unreasonable because occupants were likely still asleep and five seconds was insufficient time to infer denial of admittance).

To hold otherwise under the circumstances presented — where the purported pause following the officers' first knock-and-announce is tantamount to no pause at all — would impermissibly render the constitutional requirement that officers wait a reasonable time prior to making a forcible entry during the execution of a knock-and-announce search warrant a meaningless nullity. We therefore conclude the amount of time the officers waited after knocking and announcing before breaching the front door was unreasonable and violated defendant's constitutional right to be free from unreasonable searches and seizures. Robinson, 200 N.J. at 16-17.

The State argues that even if the officers violated defendant's constitutional right to be free from unreasonable searches and seizures, the exclusionary rule does not require suppression of the evidence. We disagree.

In Caronna, we explained the purposes of the exclusionary rule and our State's broad application of the rule to violations of the knock-and-announce requirement. 469 N.J. Super. at 494. We held the exclusionary rule bars the admission of evidence seized following an unreasonable entry into a dwelling

29

in violation of a knock-and-announce requirement contained in a search warrant.  Id. at 495; see also Rodriguez, 399 N.J. Super. at 203-05 (suggesting, but not deciding, the exclusionary rule applies where law enforcement officers fail to wait a reasonable period of time to forcibly enter a residence after knocking and announcing their presence during execution of a search warrant). We are unpersuaded a different remedy should apply where the officers violate a "necessary corollary" of the constitutionally required knock-and-announce rule by failing to wait a reasonable period before forcibly entering a residence pursuant to a search warrant that requires the officers knock-and-announce. See Robinson, 200 N.J. at 16.

The State claims a different result should apply under the circumstances presented because we are not confronted with what we characterized as a "flagrant" violation of the knock-and-announce rule in Caronna.  The argument ignores that in our State even a good faith violation of a defendant's constitutional rights provides law enforcement no refuge from application of the exclusionary rule.  State v. Novembrino, 105 N.J. 95, 157-58 (1987) (declining to recognize a good faith exception to the exclusionary rule in our State because doing so would "undermine the constitutionally-guaranteed" protections that inhere in Article 1, Paragraph 7 of the New Jersey Constitution).

We also reject the State's claim the constitutional violation here cannot be properly characterized as flagrant. Constitutional principles required the officers pause for a reasonable period before knocking down the front door of the residence, Robinson, 200 N.J. at 13-14, but Sergeant Tennant, who led the team of fifteen officers, testified he did not think about "time" at all during the execution of the search. And, as we have explained, the officers failed to honor the reasonable-wait requirement by effectively failing to wait any time at all before battering down the door to the residence.

The officers opted not to seek a no-knock warrant. Having done so, and having not received authorization from the court for a no-knock warrant, the officers effectively rendered their entry into the residence a no-knock entry by their failure to comply with the reasonable-wait requirement. That entry, even if due to ignorance, simple error, or good-faith belief, may be properly characterized as a flagrant violation of defendant's constitutional rights for which there is a need to deter "similar future violations of constitutional rights." Caronna, 469 N.J. Super. at 503 (quoting State v. Chaney, 318 N.J. Super. 217, 227 (App. Div. 1999)). Moreover, a violation of the knock-and-announce rule requires suppression under the exclusionary rule. Id. at 495; see also id. at 503 (rejecting "application of the inevitable discovery exception to

31

the exclusionary rule" where law enforcement clearly disregarded the knock-and-announce requirements of a search warrant).

We reverse the court's order denying defendant's suppression motion and remand to the trial court to allow defendant to take such actions as he may deem appropriate concerning his plea to the charge for which he was convicted.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION